IN RE the COMMITMENT OF Ronald G. SORENSON:

STATE of Wisconsin, Petitioner-Respondent,††

v.

Ronald G. SORENSON, Respondent-Appellant.†

Court of Appeals

*No. 98–3107. Submitted on briefs December 13, 2000.—Decided September 20, 2001.*

## 2001 WI App 251

(Also reported in 635 N.W.2d 787.)

---

† Petition to review granted 12-17-01.
†† Petition to cross-review granted 12-17-01.

---

On behalf of the respondent-appellant, the cause was submitted on the briefs of *T. Christopher Kelly* of *Thomas, Kelly, Habermehl & Mays, S.C.*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Warren D. Weinstein*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Dykman and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Ronald G. Sorenson was adjudicated a sexually violent person pursuant to Wis.

STAT. ch. 980 (1995–96).[1] Sorenson complains that error occurred in his Chapter 980 trial when the trial court prohibited him from presenting evidence in his attempt to show that he was wrongly convicted in 1985 of the predicate sexual assault upon which the Chapter 980 petition was based.

¶ 2. Sorenson advances two arguments on appeal. First, he contends that issue preclusion may not be used offensively in a Chapter 980 trial to prohibit a respondent from presenting evidence that he did not commit a sexually violent offense underlying a prior conviction. Second, he asserts that even if the offensive use of issue preclusion is generally permitted in Chapter 980 trials, it was fundamentally unfair to apply the doctrine under the particular facts of his case. We reject Sorenson's first argument and remand for a determination on the second.

## A. BACKGROUND

¶ 3. In 1985, Sorenson was convicted of first-degree sexual assault of his seven-year-old daughter, L.S. During that criminal trial, L.S. alleged that both her father, Ronald Sorenson, and her father's brother, Donald Sorenson, sexually assaulted her. *See State v. Sorenson*, 143 Wis. 2d 226, 237–38, 421 N.W.2d 77 (1988). Ronald's brother, Donald, was also convicted of first-degree sexual assault of L.S. in a separate trial. *See State v. Sorenson*, 152 Wis. 2d 471, 477, 449 N.W.2d 280 (Ct. App. 1989).

¶ 4. Six years later, in 1991, Sorenson filed a motion for a new trial, asserting newly discovered

---

[1] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

evidence. He claimed that L.S. had recanted her trial testimony. Before the trial court ruled on the merits of this motion, Sorenson and the State reached an agreement that resulted in an amended judgment reducing his sentence and the withdrawal of his motion for a new trial.

¶ 5. Sorenson was released on parole in October of 1991. His parole included conditions requiring that he complete a sex offender treatment program and that he not have contact with any children.

¶ 6. Sometime in 1993, a woman brought her daughter, A.L., to the City of Elroy police station and complained that A.L. had been sexually assaulted by Sorenson. A.L. told police that, when she was alone with Sorenson, he touched her vaginal area. Parole authorities were notified and also learned that Sorenson failed to successfully complete the sex offender treatment program in which he had enrolled. Sorenson's parole was revoked in May of 1993 on the basis that he had unauthorized contact with several minor children and because he had touched A.L.'s vaginal area.

¶ 7. Prior to Sorenson's scheduled release from prison in 1995, the State filed a petition to have Sorenson civilly committed as a sexually violent person pursuant to WIS. STAT. ch. 980. Before trial on the Chapter 980 petition, the State filed a motion requesting that Sorenson be prohibited at trial from: (1) eliciting evidence to impeach his underlying conviction and (2) eliciting evidence that L.S. recanted her testimony. While the trial court seemed to reject the State's argument that Sorenson should not be permitted to present recantation evidence due to issue preclusion, it eventually ruled that such evidence would not be permitted because admission would mean relitigation of

242

the prior conviction and would cause confusion and unfair prejudice to Sorenson's detriment.

¶ 8. At the Chapter 980 trial, the State presented evidence showing that Sorenson had been convicted in 1985 of sexually assaulting his daughter. The State used that evidence in part to support its burden of proving that Sorenson suffered from a mental disorder and that, because of the disorder, it was substantially probable that he would engage in future acts of sexual violence. The jury returned a verdict against Sorenson, determining that he is a sexually violent person. This appeal followed.

¶ 9. Additional facts will be set forth below where pertinent to the analysis.

### B. DISCUSSION

¶ 10. On appeal, Sorenson sets forth two arguments. First, he contends that issue preclusion may not be used offensively in a Chapter 980 trial to prohibit a respondent from presenting evidence that he did not commit a sexually violent offense underlying a prior conviction. Second, he asserts that even if the offensive use of issue preclusion is generally permitted in Chapter 980 trials, it was fundamentally unfair to apply the doctrine under the particular facts of his case. We will first set forth the general law relating to issue preclusion and then address Sorenson's arguments.

### 1. The Doctrine Of Issue Preclusion

■

¶ 11. The doctrine of issue preclusion, formerly referred to as collateral estoppel, prohibits relitigation of issues conclusively decided in a prior action between the same or different parties. *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 550–51, 525 N.W.2d 723 (1995). The use of issue preclusion may be described as

either "offensive" or "defensive." The defensive use of issue preclusion prevents a *plaintiff* from relitigating an issue decided in a prior action, while the offensive use of issue preclusion prevents a *defendant* from relitigating an issue decided in a prior action. *Michelle T. v. Crozier*, 173 Wis. 2d 681, 684 n.1, 698, 495 N.W.2d 327 (1993). The term "offensive" is used because this latter application can be characterized as allowing a plaintiff to offensively use the doctrine to establish an element of the plaintiff's case.

¶ 12. The goals of issue preclusion include judicial efficiency and protection against repetitious litigation. These goals are balanced against the right to litigate claims before a jury. *Id.* at 688. Formalistic requirements for the application of issue preclusion have given way to "a looser, equities-based interpretation of the doctrine." *Id.* Under this more modern analysis, courts consider an array of factors in deciding whether issue preclusion is equitable in a particular case.

¶ 13. The application of issue preclusion requires a two-step analysis. The first step involves a question of law: Is the litigant against whom issue preclusion is being asserted in privity, or does the litigant have sufficient identity of interest with a party to the prior proceeding such that applying issue preclusion to the litigant would not violate his or her due process rights? *Paige K.B. v. Steven G.B.*, 226 Wis. 2d 210, 224, 594 N.W.2d 370 (1999).

¶ 14. The second step involves a question that is generally discretionary: Does the actual application of issue preclusion in the particular case comport with

principles of fundamental fairness? *Id.* at 225. An array of factors bearing on this second step was identified in *Michelle T.*:

(1) "[C]ould the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment"?

(2) "[I]s the question one of law that involves two distinct claims or intervening contextual shifts in the law"?

(3) "[D]o significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue"?

(4) "[H]ave the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second"?

(5) "[A]re matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?"

*Michelle T.*, 173 Wis. 2d at 689 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 28 (1980)). While the determination of this second step is generally a discretionary determination for the trial court, some of the *Michelle T.* factors also present questions of law. *Paige K.B.*, 226 Wis. 2d at 225.

### 2. Offensive Use Of Issue Preclusion In A Chapter 980 Trial

¶ 15. Sorenson acknowledges that our supreme court held in *Michelle T.* that the offensive use of issue

245

preclusion is permitted against a defendant in a civil trial when a fact or issue has been decided in the civil defendant's prior criminal trial. He contends, however, that *Michelle T.* does not apply to Chapter 980 trials, despite the fact that they are civil trials. Sorenson's reasoning is disclosed in his following assertions:

(1) In Chapter 980 trials, an important part of the State's evidence showing that respondents have a mental disorder and that there is a substantial probability they will engage in future acts of sexual violence typically includes a conviction showing the commission of the predicate sexually violent offense or other sexually violent offense. Thus, whether a respondent committed the prior sexually violent offense is an "essential fact" in a Chapter 980 trial.

(2) Criminal defendants have a constitutional right to have a jury determine the essential facts upon which the State relies in seeking to prove its case.

(3) The constitutional right to have a jury determine the essential facts in a case is so critical that the offensive use of issue preclusion is prohibited in criminal cases.

(4) WISCONSIN STAT. § 980.05(1m) directs that "[a]ll constitutional rights available to a defendant in a criminal proceeding" are available to respondents in Chapter 980 trials.

(5) By virtue of WIS. STAT. § 980.05(1m), the offensive use of issue preclusion is prohibited in a Chapter 980 trial.

¶ 16. Before proceeding, we clarify that Sorenson does not contend on appeal that his proffered recantation evidence would have been admissible to rebut proof from the State that he was *convicted* of sexually assault-

ing L.S. Rather, Sorenson asserts that the evidence would have undermined the State's proof with respect to two other elements: whether he currently suffers from a mental disorder, and whether, because of that disorder, it is substantially probable that he will engage in future acts of sexual violence. *See* Wis. Stat. § 980.02.[2]

¶ 17. We also pause to note that Sorenson cites only non-binding authority for the proposition that the offensive use of issue preclusion is prohibited in criminal cases. We find no cases from Wisconsin that have decided the issue. However, in light of how we resolve the question presented, we need not address the issue. We will assume, without deciding, that the offensive use of issue preclusion is prohibited in Wisconsin criminal cases.

¶ 18. Although Sorenson sometimes frames this first issue as whether courts may use the doctrine of issue preclusion to prohibit evidence offered by a Chapter 980 respondent, his reasoning has much broader implications. In effect, he argues that in every Chapter

---

[2] At a trial on a Chapter 980 petition, the State must prove the following:

(1) That the person who is the subject of the petition has been convicted of a sexually violent offense;

(2) That at the time the petition was filed, the person was within ninety days of release from a sentence imposed for a conviction for a sexually violent offense;

(3) That the person currently has a mental disorder; and

(4) That the person is dangerous to others because the person has a mental disorder that creates a substantial probability that he or she will engage in future acts of sexual violence.

Wis. Stat. §§ 980.02(2) and 980.05(3)(a); *State v. Thiel,* 2000 WI 67, ¶ 11, 235 Wis. 2d 823, 612 N.W.2d 94.

980 trial the State is statutorily obligated to relitigate prior convictions for sexually violent offenses. Accordingly, we must construe the statutory language at issue.

¶ 19. The construction of a statute is a question of law which we review *de novo*. *State v. Irish*, 210 Wis. 2d 107, 110, 565 N.W.2d 161 (Ct. App. 1997). The guiding principle in statutory construction is to discern legislative intent. *Id*. We first look to the language of the statute itself and attempt to interpret it based on "the plain meaning of its terms." *State v. Williquette*, 129 Wis. 2d 239, 248, 385 N.W.2d 145 (1986). In addition to these basic principles, there are three more rules of statutory construction that apply.

¶ 20. First, when there is a conflict between general and specific statutory provisions, the specific provision takes precedence. *Gillen v. City of Neenah*, 219 Wis. 2d 806, 822, 580 N.W.2d 628 (1998).

¶ 21. Second, the plain language of a statute should not be construed in a manner that results in absurd or unreasonable consequences. *State v. Yellow Freight Sys., Inc.*, 101 Wis. 2d 142, 153, 303 N.W.2d 834 (1981).

¶ 22. Third, when statutory language is ambiguous, we may examine other construction aids such as legislative history, context, and subject matter. *County of Jefferson v. Renz*, 231 Wis. 2d 293, 302, 603 N.W.2d 541 (1999). A statute is ambiguous if reasonable persons could disagree as to its meaning. *Id*. The interaction of two or more statutes can operate to create an ambiguity. *Trojan v. Bd. of Regents*, 100 Wis. 2d 53, 57,

248

301 N.W.2d 269 (Ct. App. 1980), *rev'd on other grounds,* 104 Wis. 2d 277, 311 N.W.2d 586 (1981).

¶ 23. Turning to the statutory language, we find that there is a conflict between the general provision in subsection (1m) and the more specific provision in subsection (4) of WIS. STAT. § 980.05. Subsection (1m) very generally provides that "[a]ll constitutional rights available to a defendant in a criminal proceeding are available to the person." Reading this subsection as Sorenson does puts it in conflict with subsection (4), which provides:

> Evidence that the person who is the subject of a petition under s. 980.02 was *convicted for* or committed sexually violent offenses before committing the offense or act on which the petition is based is not sufficient to establish beyond a reasonable doubt that the person has a mental disorder.

(Emphasis added.) By providing that "[e]vidence that [a Chapter 980 respondent] was convicted for . . . sexually violent offenses . . . is not sufficient to establish beyond a reasonable doubt that the [respondent] has a mental disorder," the legislature communicated that it contemplated conviction evidence would be used as part of the evidence establishing a mental disorder, but that conviction evidence, by itself, is insufficient to support the State's burden of proof.

¶ 24. Moreover, even if the interplay of subsections (1m) and (4) is not viewed as a conflict, at a minimum it creates ambiguity which permits us to examine context and subject matter. And, even if subsection (4) did not exist and we believed that the plain language of subsection (1m) prohibited the offensive use of issue preclusion, we would find that such interpretation leads to absurd and unreasonable results.

¶ 25. Sorenson's interpretation of the statute would mark a dramatic shift in how Chapter 980 trials are conducted, requiring a retrial of prior sexual assault convictions even though the person in question has previously been found guilty of the offense beyond a reasonable doubt. Absent a stipulation by a respondent, his sexual assault victim or victims from these prior cases would be required to endure a second trial.

¶ 26. We do not believe that the legislature intended to subject victims and their families to the ordeal of a second trial when the respondent has already been found guilty of that crime beyond a reasonable doubt. If the legislature had intended this to be the procedure in Chapter 980 trials, it would have provided so expressly.

¶ 27. In addition, while Sorenson has pointed to cases from some other jurisdictions, there appears to be no decision from either the United States Supreme Court or a Wisconsin court holding that the offensive use of issue preclusion is prohibited in a criminal case. This dearth of case law on the topic in the criminal context shows that we are dealing with an unusual application of a constitutional right. This is just the sort of situation in which the blanket transporting of rights would lead to an absurd and unintended consequence.

¶ 28. Accordingly, we hold that the doctrine of issue preclusion is available for use offensively in Chapter 980 trials. When a respondent was previously convicted of a sexually violent offense in a trial, issue preclusion may be used to prevent the respondent from offering evidence to show that he or she did not commit the prior offense.

### 3. Application Of Issue Preclusion To The Facts In This Case

■

¶ 29. Sorenson argues that even if issue preclusion may be used offensively in Chapter 980 trials, it was nonetheless unfair to apply the doctrine at his trial. Sorenson's argument in this respect is directed at the fifth *Michelle T.* factor. He argues that if the trial court had properly applied this factor, it would have required the State to prove anew that he sexually assaulted his daughter in 1985.

¶ 30. The trial court did not, in any meaningful manner, attempt to determine under issue preclusion analysis whether it was equitable to permit the State to prove the prior offense with the use of conviction evidence. Instead, the trial court ultimately resolved the matter by excluding the recantation testimony on the basis that its admission would require relitigation of the sexual assault allegation, thereby causing confusion and misleading the jury to Sorenson's detriment. Without citing to the evidence code, the court apparently analyzed the matter under WIS. STAT. § 904.03. The State has adopted and defended this methodology on appeal.

¶ 31. The approach used by the trial court, and defended by the State, misconstrues the issue. The question was not whether Sorenson should have been allowed to present evidence undercutting the validity of his prior conviction. Rather, the question was whether the State should have been permitted to use the 1985 conviction to establish the fact that Sorenson sexually assaulted his daughter. Either it was proper to permit the State to use the conviction in this manner or the State should have been required to prove the assault by other means. It makes no sense to permit the admission

of a prior conviction as evidence that Sorenson assaulted his daughter and then also require the parties to relitigate the assault. WISCONSIN STAT. § 904.03 was an incorrect framework for analyzing the matter.

¶ 32. In light of our holding that issue preclusion is applicable to Chapter 980 trials, we agree with Sorenson that the trial court should have analyzed admission under the fifth *Michelle T.* factor. This factor asks whether there are matters of public policy and individual circumstances which render the application of issue preclusion fundamentally unfair. *Michelle T.*, 173 Wis. 2d at 689. We also agree with Sorenson that this fifth prong includes consideration of whether circumstances have changed since the criminal conviction such that it is inequitable to apply issue preclusion. This equitable determination is a matter of trial court discretion. *Paige K.B.*, 226 Wis. 2d at 225.

¶ 33. Having concluded that the trial court's alternate basis for excluding the recantation testimony cannot stand, we remand to the trial court with directions that it consider the question under the fifth *Michelle T.* factor and any other factors which may be relevant under issue preclusion analysis.

¶ 34. We must remand, rather than attempt to resolve the matter, for two reasons. First, we may not apply a discretionary test in the trial court's stead. *See Wisconsin Ass'n of Food Dealers v. City of Madison*, 97 Wis. 2d 426, 434–35, 293 N.W.2d 540 (1980).

¶ 35. Second, we cannot conclude that no reasonable trial court would have permitted the State to use Sorenson's 1985 conviction to prove that he assaulted his daughter. The record does suggest that one individual circumstance which might render the applica-

tion of issue preclusion fundamentally unfair under the fifth *Michelle T.* factor is whether there was newly discovered evidence which would have warranted a new trial in Sorenson's prior criminal case. This topic was raised by Sorenson in 1991, but abandoned pursuant to an agreement with the prosecution. However, regardless what would have happened had the claim been pursued in 1991, it is far from clear that such an inquiry would have weighed in favor of Sorenson at the time of his Chapter 980 trial, or whether it would if we granted him a new trial at this point in time. The test for newly discovered evidence includes asking whether it is reasonably probable that a new trial will produce a different result. *State v. Carnemolla*, 229 Wis. 2d 648, 656, 600 N.W.2d 236 (Ct. App. 1999). Here, the record does not disclose the particulars of Sorenson's daughter's alleged recantation and, at the same time, it does disclose that Sorenson confessed to at least two people after 1991 that he sexually assaulted his daughter.

¶ 36. Consequently, we cannot conclude from the record before us that no reasonable trial court would have allowed the State to use Sorenson's 1985 conviction to prove that he assaulted his daughter. We therefore remand for a determination on that issue. If the trial court concludes that the application of issue preclusion was improper, the judgment will remain reversed and Sorenson must be given a new Chapter 980 trial. If the trial court concludes that the application of issue preclusion was proper, it shall reinstate the judgment.[3]

---

[3] As argued and briefed by the parties, this case does not present the arguably distinct question of whether the application of issue preclusion in a case like this also precludes a respondent from exploring the effect of a recanting victim on the opinion of an expert witness. The record does not indicate

*By the Court.*—Judgment reversed and cause remanded with directions.

¶ 37. DYKMAN, J. (*concurring in part; dissenting in part*). I agree with the majority that the judgment in this matter should be reversed. But I would remand for a trial at which Sorenson would be permitted to introduce evidence of the victim's recantation. The jury could then weigh that testimony, Sorenson's possible testimony, and the testimony of the other witnesses to determine whether it was substantially probable that Sorenson would engage in acts of sexual violence in the future.

¶ 38. I also agree with the majority that trial courts are not barred from applying the doctrine of offensive issue preclusion in WIS. STAT. ch. 980 cases. Where I part company is with the majority's conclusion that "Sorenson's interpretation of the statutes would mark a dramatic shift in how Chapter 980 trials are conducted, requiring a retrial of prior sexual assault convictions. . . ." Majority at ¶ 25. While Sorenson does argue that offensive issue preclusion is unavailable in ch. 980 trials, he also argues that in this case, an analysis of the factors listed in *Michelle T. v. Crozier*, 173 Wis. 2d 681, 689, 495 N.W.2d 327 (1993), requires that he be permitted to present evidence of the victim's recantation. Recantation cases are rare, and it is the victim's recantation in this case that separates it from the usual ch. 980 case. In the usual ch. 980 case where

that Sorenson was prohibited from questioning the expert witnesses on this topic and Sorenson has not raised this issue.

a trial is held, the *Michelle T.* factors would generally balance out in favor of the State.[1]

¶ 39. I also disagree with the majority's decision to remand to the trial court to consider the fifth *Michelle T.* factor. The majority does so because it labels the fifth *Michelle T.* factor discretionary, and therefore reviewed for an erroneous exercise of discretion. It is not that easy. The fifth factor is whether there "are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair. . . ." *Michelle T.*, 173 Wis. 2d at 689. The issue here is whether the circumstances have changed by virtue of the victim's recantation which make it inequitable to apply issue preclusion to bar evidence of that recantation. Because the majority examines that issue using the wrong standard of review, it reaches the wrong result.

¶ 40. In *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis. 2d 210, 225, 594 N.W.2d 370 (1999), the supreme court noted that in *Ambrose v. Continental Ins. Co.*, 208 Wis. 2d 346, 560 N.W.2d 309 (Ct. App. 1997), we had concluded that certain of the *Michelle T.* factors present questions of law that we review *de novo*. In *Ambrose*, we also noted that the standard of review of a particular decision on issue preclusion may be affected by the context in which its application is sought. *Ambrose*, 208 Wis. 2d at 356. The supreme court in *Paige K.B.* also cited *Ayers v. City of Richmond*,

---

[1] The usual WIS. STAT. ch. 980 case will often involve a guilty or no-contest plea to the underlying crime. Generally, issue preclusion is only available when the prior adjudication was the result of a trial. *See Michelle T. v. Crozier*, 173 Wis. 2d 681, 687, 495 N.W.2d 327 (1993). Thus, while the majority asserts that Sorenson's view would make dramatic changes in the way ch. 980 matters are tried, in reality the opposite is true.

895 F.2d 1267, 1270 (9th Cir. 1990), for the proposition that "[t]he availability of collateral estoppel [issue preclusion] is a mixed question of law and fact in which legal issues predominate." *Paige K.B.*, 226 Wis. 2d at 225.

¶ 41. Certainly, whether public policy renders the use of offensive issue preclusion fundamentally unfair is a question of law.[2] The legislature, not the courts, determines the public policy of Wisconsin. *Rice v. City of Oshkosh*, 148 Wis. 2d 78, 91, 435 N.W.2d 252 (1989). And the policy the legislature has set for ch. 980 proceedings is that "all rules of evidence in criminal actions apply," and "All constitutional rights available to a defendant in a criminal proceeding are available to the [subject of the petition]." Wis Stat. § 980.05(1m) (1995–96). One of the basic concepts in criminal cases is that a defendant must be given a fair opportunity to defend against the State's accusations and be permitted to call witnesses to challenge the State's accusation. *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). I conclude that public policy requires that Sorenson be permitted to present evidence of the victim's recantation.

¶ 42. "Individual circumstances" are certainly factual in nature, but here the individual circumstance which dwarfs all others is the victim's recantation. That recantation is undisputed.[3] We do not give a deferential

---

[2] Under the majority's theory, trial courts could come to differing conclusions as to the public policy of Wisconsin and an appellate court would affirm if the courts gave sufficient reason for their conclusions. This seems a strange way to determine the public policy for the State.

[3] The majority is concerned with the "particulars" of what it terms an "alleged recantation." Not even the State doubts that L.S. testified at a motion hearing that Sorenson was not the

256

review to matters where facts are undisputed. *In re Sarah R.P.*, 2001 WI App 49, ¶ 6, 241 Wis. 2d 530, 624 N.W.2d 872. While the weight and credibility of evidence are matters in which we defer to a trial court, *Matter of Estate of Huehne*, 175 Wis. 2d 33, 43, 498 N.W.2d 870 (Ct. App. 1993), in ch. 980 proceedings, the subject of a ch. 980 petition is entitled to a jury trial. A trial court may not exclude relevant evidence because it concludes that the jury would not find the evidence persuasive. *See* Wis. Stat. § 904.03 (1995–96). Thus, I conclude that the individual circumstances, *i.e.* the victim's recantation, would render it fundamentally unfair to apply offensive issue preclusion to prevent Sorenson from presenting the recantation evidence to the jury.

¶ 43. I agree with the majority that it is far from clear that an inquiry into Sorenson's innocence would weigh in favor of Sorenson. But I view the real issue as whether we should adopt rules which effectively prevent an innocent person from demonstrating his or her innocence. The rule the majority has adopted has, as a practical matter, made it difficult to the point of near impossibility for an innocent person facing a ch. 980 proceeding to try to show a jury that he or she was wrongly convicted and therefore not dangerous. I would relax that standard somewhat. In the usual ch. 980 case where there is no victim recantation or similar factor, there would be no reason why offensive collateral estoppel would not apply to prevent a challenge to the

person who sexually assaulted her. Presumably, the "particulars" of recantation would make it more or less believable. That, in the context of a ch. 980 proceeding, is a matter for the jury. *See Kinship Inspection Serv., Inc. v. Newcomer*, 231 Wis. 2d 559, 583, 605 N.W.2d 579 (Ct. App. 1999) (credibility of witnesses is left to the province of the jury).

underlying judgment of conviction.[4] But where, as here, there is a factor which, if believed by a jury, would cast significant doubt on that conviction, and hence the likelihood of future dangerousness, I would leave it to a jury to sort out the truth. I therefore respectfully concur in the majority's mandate, though not its reasoning or directions.

■■■■■■

---

[4] *But see* note 1.