IN RE the COMMITMENT OF Ronald G. SORENSON:

STATE of Wisconsin, Petitioner-Respondent-Cross Petitioner,

v.

Ronald G. SORENSON, Respondent-Appellant-Petitioner.

Supreme Court

*No. 98–3107. Oral argument May 1, 2002.—Decided June 28, 2002.*

2002 WI 78

(Also reported in 646 N.W.2d 354.)

55

For the respondent-appellant-petitioner there were briefs by *T. Christopher Kelly* and *Kelly & Habermehl, S.C.*, Madison, and oral argument by *T. Christopher Kelly.*

For the petitioner-respondent-cross-petitioner the cause was argued by *Warren D. Weinstein,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

¶ 1. WILLIAM A. BABLITCH, J. Ronald Sorenson (Sorenson) was convicted of first-degree sexual

57

assault of his daughter L.S., largely on the basis of her allegations. Subsequently, Sorenson was found to be a sexually violent person by a jury under Wis. Stat. ch. 980 (1995–96).[1] At that ch. 980 trial, Sorenson was not allowed to put in evidence that L.S. had recanted her original allegations. The State of Wisconsin (State) successfully argued that Sorenson was precluded from putting in that evidence on the grounds of issue preclusion. The court of appeals remanded the case to the circuit court for a determination on the question of whether application of the doctrine would be fundamentally unfair under the circumstances. Sorenson seeks review, arguing that this case should be remanded for a new trial and the evidence of recantation admitted. The State argues that issue preclusion bars the circuit court from admitting this evidence of recantation.

¶ 2. We affirm the decision of the court of appeals with some modification. We remand this matter to the circuit court for hearings on whether L.S.'s recantation evidence meets the test for newly discovered evidence sufficient to warrant a new trial under the standards set forth in *State v. McCallum,* 208 Wis. 2d 463, 561 N.W.2d 707 (1997). If the recantation evidence meets this test, we conclude that the circuit court's exclusion of this evidence was fundamentally unfair to Sorenson, and issue preclusion, even if it could apply, must not apply as a matter of law under these circumstances, particularly in consideration of the fact that this issue was never fully resolved in post-conviction proceedings in the underlying criminal matter. Further, if the evidence meets this test, we conclude that Sorenson is

[1] All subsequent references to the Wisconsin Statutes are to the 1995–96 version unless otherwise indicated.

entitled to a new trial at which the court must admit this evidence. Accordingly, with these modifications, we affirm the decision of the court of appeals, reversing and remanding the matter for additional hearings.

## I. BACKGROUND

¶ 3. In March 1985, Sorenson was charged with one count of first-degree sexual assault of his seven-year-old daughter, L.S. *State v. Sorenson,* 143 Wis. 2d 226, 233–34, 421 N.W.2d 77 (1988). L.S. accused both Sorenson and his brother, Donald, of sexually assaulting her. *Id.* at 233. Donald was also charged with first-degree sexual assault. *See State v. Sorenson,* 152 Wis. 2d 471, 449 N.W.2d 280 (Ct. App. 1989). A jury convicted Sorenson on this count in September 1985. He was sentenced to 17 years in prison. We affirmed Sorenson's conviction in 1988. *Sorenson,* 143 Wis. 2d at 232–33.

¶ 4. In 1991, Sorenson filed a motion for post-conviction relief, seeking a new trial based on newly discovered evidence. He alleged that L.S. had recently recanted her trial testimony implicating him as her assaulter. Her recantation was allegedly based on her confusion at the time of trial as to whether Sorenson or his brother committed the assault. The circuit court did not determine the merits of this motion, although it did hear testimony from L.S. on her recantation. Her testimony is not part of the record in Sorenson's ch. 980 case. Instead, before the court ruled, the State and Sorenson reached an agreement. Under the terms of the agreement, Sorenson would withdraw his motion for a new trial in exchange for a reduction of his sentence on the conviction. This reduction resulted in Sorenson's release on parole less than two months later.

¶ 5. Sorenson's conditions of parole included that he complete a sex offender program and that he not have contact with children. Sorenson failed to complete any sex offender program; he maintained that, because he was innocent of committing the assault, he did not need to participate in the program. In 1993, his parole was revoked because he had unauthorized contact with several minor children, because he was abusing alcohol, and because of allegations that he touched the vaginal area of a five-year-old girl, A.L. Criminal charges were never brought against Sorenson for this alleged sexual contact with A.L.

¶ 6. In July 1995, shortly before Sorenson's scheduled release date, the State filed a petition seeking an order committing Sorenson as a sexually violent person pursuant to Wis. Stat. ch. 980. Proceedings on this petition were delayed for various reasons, but resumed in January 1998.

¶ 7. Before his ch. 980 trial, Sorenson indicated that he intended to introduce testimony from L.S. to show that she recanted her 1985 trial testimony. In response, the State filed a motion in limine to prohibit Sorenson (1) from eliciting evidence that would impeach his 1985 conviction and (2) from eliciting evidence that would show that L.S. recanted. In support of its motion, the State relied on the doctrine of issue preclusion.

¶ 8. Following a hearing on the motion, the court in part granted and in part denied the motion. The court held that Sorenson's criminal case had been fully tried and appealed, and therefore evidence could not be introduced to impeach the criminal conviction. The court, however, concluded that issue preclusion did not bar Sorenson from introducing evidence pertaining to L.S.'s recantation. The court held that the factual issues

surrounding the recantation were never fully determined by a final judgment. The court concluded that issue preclusion did not apply.

¶ 9. Approximately a week before his ch. 980 trial, the State once again objected to Sorenson's introduction of evidence related to L.S.'s recantation. The State argued that the evidence should be excluded from trial because it would involve relitigation of the conviction, it was not relevant, and because it would mislead the jury. The court excluded the evidence. It concluded that allowing L.S. to testify would essentially involve a retrial of the underlying issue of whether or not Sorenson committed the sexual assault in 1985. This retrial, the court reasoned, would confuse the jury in a manner that would be prejudicial and detrimental to Sorenson's case.

¶ 10. Sorenson was tried before a jury on the ch. 980 petition. The jury found Sorenson a sexually violent person under Wis. Stat. ch. 980. The court entered judgment and issued an order for Sorenson's commitment. Sorenson appealed.

¶ 11. The court of appeals reversed the judgment and remanded the case for further proceedings. *State v. Sorenson*, 2001 WI App 251, ¶ 2, 248 Wis. 2d 237, 635 N.W.2d 787. Although the court concluded that the State could use issue preclusion in such cases to prevent a respondent from offering evidence on the underlying offense, it remanded to have the circuit court exercise its discretion and determine whether application of the doctrine in this case was fundamentally unfair to Sorenson. *Id.* at ¶¶ 28, 32. It instructed the circuit court to grant Sorenson a new trial if it determined that the application of issue preclusion would be unfair. *Id.* at ¶ 36.

¶ 12. Judge Dykman concurred in part and dissented in part. He agreed that circuit courts are not barred from applying issue preclusion in ch. 980 cases. *Id.* at ¶ 38 (Dykman, J., dissenting). He disagreed, however, that the matter should have been remanded to the circuit court for a determination on whether it was unfair to apply the doctrine. *Id.* at ¶ 39 (Dykman, J., dissenting). He concluded that, under the facts of this particular case, the court of appeals could find that issue preclusion did not apply as a matter of law and that Sorenson was entitled to a new trial. *Id.* at ¶¶ 39–43 (Dykman, J., dissenting).

## II. DISCUSSION

¶ 13. Sorenson seeks a new ch. 980 trial. He argues that the circuit court's exclusion of the recantation evidence constituted a denial of his constitutional right to present a defense and his constitutional right to have a jury determine every fact at issue. He intended to introduce the recantation evidence to challenge the bases of the evaluations of the State's psychological experts. These experts evaluated Sorenson before trial and testified at trial to his mental disorder and his future dangerousness—two elements necessary for a ch. 980 commitment. *See* Wis. Stat. § 980.02(b) & (c). Sorenson argues that the experts based their evaluations primarily on his commission of the underlying crime and on his failure to complete several sex offender treatment programs, which were not completed because he refused to admit to committing the assault. Thus, he argues that by excluding the recantation evidence the court effectively left him without any means to challenge the expert's evaluations. He asserts that he was denied a fair trial.

¶ 14. Sorenson also contests the court of appeals' conclusion that offensive issue preclusion[2] is available for the state in a ch. 980 case. He contends, as he did at the court of appeals, that some courts have held that offensive issue preclusion is unavailable in criminal cases due to the constitutional protections afforded to criminal defendants. *See, e.g., United States v. Pelullo,* 14 F.3d 881, 889–96 (3d Cir. 1994) (rejecting application of issue preclusion against a defendant in successive criminal proceedings). Accordingly, he argues that the doctrine should not apply in this case because ch. 980 respondents are afforded the same constitutional protections as criminal defendants. *See* Wis. Stat. § 980.05(1m) ("All constitutional rights available to a defendant in a criminal proceeding are available to the person [who is the subject of the petition under s. 980.02].").

¶ 15. The court of appeals refused to recognize a bar on offensive issue preclusion by the state in ch. 980 cases. *Sorenson,* 2001 WI App 251, ¶ 28. In reaching this conclusion, the court interpreted Wis. Stat. ch. 980 and concluded that prohibiting issue preclusion in such cases, and allowing the relitigation of the underlying conviction, is contrary to language in the statutes and to legislative intent and that an alternative interpretation of the statute would lead to absurd results. *Id.* at

---

[2] The doctrine of issue preclusion is "designed to limit the relitigation of issues that have been contested in a previous action between the same or different parties." *Michelle T. v. Crozier,* 173 Wis. 2d 681, 687, 495 N.W.2d 327 (1993). It may be used offensively, as in this case, or defensively. Offensive issue preclusion "occurs when the plaintiff seeks to foreclose a defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with [the plaintiff or] another party." *Id.* at 684 n.1.

63

¶¶ 24–26. The court also noted that there was no decision from the United States Supreme Court or a Wisconsin court holding that offensive issue preclusion is prohibited in a criminal context and that the "dearth of case law on the topic in the criminal context shows that we are dealing with an unusual application of a constitutional right." *Id.* at ¶ 27. Thus, the court held that issue preclusion could be used in ch. 980 cases generally. *Id.* at ¶ 28.

¶ 16. In its brief, the State regarded ch. 980 cases as civil actions and argued that issue preclusion is therefore available in ch. 980 cases. At oral argument, however, the State recognized, unlike the court of appeals, that ch. 980 respondents are afforded the same constitutional rights as criminal defendants under Wis. Stat. § 980.05(1m) and acknowledged a significant number of cases that hold that issue preclusion is unavailable in criminal cases because of the constitutional rights afforded to criminal defendants. As a result, the State conceded that a threshold issue in this case is whether issue preclusion is even available in ch. 980 cases.

A

¶ 17. As a preliminary matter, we first review whether ch. 980 respondents are afforded the same constitutional protections as criminal defendants, resulting in a potential bar on offensive issue preclusion. The court of appeals regarded a ch. 980 respondent's constitutional protections as limited, primarily because of language contained in the statutes. We disagree.

¶ 18. A determination on the constitutional rights afforded to ch. 980 respondents requires an interpreta-

tion of Wis. Stat. ch. 980. We review statutory interpretation questions de novo. *State v. Thiel,* 2000 WI 67, ¶ 10, 235 Wis. 2d 823, 828, 612 N.W.2d 94. "If the language of the statute clearly and unambiguously sets forth the legislative intent, we need not look beyond the language to determine the meaning of the statute." *Id.*

¶ 19. Wisconsin Stat. § 980.05(1m) unambiguously provides ch. 980 respondents with the same constitutional protections afforded to criminal defendants. It states:

> At the trial to determine whether the person who is the subject of a petition under s. 980.02 is a sexually violent person, all rules of evidence in criminal actions apply. All constitutional rights available to a defendant in a criminal proceeding are available to the person.

§ 980.05(1m). The court of appeals, however, questioned the scope of these constitutional protections in light of an apparent conflict or ambiguity caused by a more specific statute, Wis. Stat. § 980.05(4). *Sorenson,* 2001 WI App 251, ¶ 23. This statutory section provides:

> Evidence that the person who is the subject of a petition under s. 980.02 was convicted for or committed sexually violent offenses before committing the offense or act on which the petition is based is not sufficient to establish beyond a reasonable doubt that the person has a mental disorder.

§ 980.05(4). The court noted that subsection (1m) conflicted with subsection (4) because this latter subsection suggested that the state could use a conviction as evidentiary support for a finding of mental disorder necessary for commitment. *Sorenson,* 2001 WI App 251, ¶ 23. Therefore, the court apparently questioned whether a ch. 980 respondent would have a constitu-

tional right to have a jury reexamine the facts of his or her underlying conviction at his or her ch. 980 trial.

¶ 20. Our review of the statutes, however, does not result in any finding of conflict or ambiguity between these subsections. A plain reading of subsection (4) reveals that this section simply dismisses the state's ability to prove mental disorder with a judgment of conviction or evidence of the respondent committing a sexual offense. This statute instead contemplates that the state must put forth expert evidence showing the respondent's mental disorder.[3] Thus, because we find that subsection (4) does not create any conflict or ambiguity with subsection (1m), we conclude that ch. 980 respondents are afforded the same constitutional protections as criminal defendants.

### B

¶ 21. The next issue is whether issue preclusion is unavailable considering the constitutional protections afforded to ch. 980 respondents.

¶ 22. We recognize the application of issue preclusion in this context is an important issue. However, we conclude that we should not reach a determination on

---

[3] Indeed, in *State v. Post,* 197 Wis. 2d 279, 306, 541 N.W.2d 115 (1995), we specifically contemplated that mental disorder must be proven through expert examination, stating:

> [P]ersons will not fall within chapter 980's reach unless they are *diagnosed* with a disorder that has the specific effect of predisposing them to engage in acts of sexual violence. Not all persons who commit sexually violent crimes can be diagnosed as suffering from mental disorders, nor are all persons with a mental disorder predisposed to commit sexually violent offenses. (Emphasis added.)

this question at this time because the issue has not been fully briefed by the State. Instead, we conclude that, even if the doctrine would generally apply, application of the doctrine may be fundamentally unfair for Sorenson under the factors for restricting the application of the doctrine under *Michelle T. v. Crozier,* 173 Wis. 2d 681, 495 N.W.2d 327 (1993).

■

¶ 23. We have adopted a modern approach to issue preclusion, that is, one that does not depend on formalistic requirements, but instead depends on a "looser, equities-based interpretation of the doctrine." *Id.* at 688. This approach looks primarily at whether application of the doctrine would be fair to the party against whom it is applied. *Id.* at 693. The decision on whether this doctrine should apply in any given case is decided on a case-by-case basis. *Id.* at 693, 698. This approach seeks to balance competing goals, including "judicial efficiency and finality, protection against repetitious or harassing litigation, and the right to litigate one's claims before a jury . . . ." *Id.* at 688. To this end, the *Michelle T.* court provided a list of factors for courts to consider to ensure that the rights of all parties were protected in seeking a full and fair adjudication of all issues.

> Courts may consider some or all of the following factors to protect the rights of all parties to a full and fair adjudication of all issues involved in the action: (1) could the party against whom preclusion is sought, as a matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion

67

had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

*Id.* at 688–89 (citing *Restatement (Second) of Judgments: Exceptions to the General Rule of Issue Preclusion* § 28 (1980)). We focus on the fifth factor listed above in reaching our conclusion.

¶ 24. Here, we are presented with recantation evidence that was newly discovered after trial. Sorenson sought a new criminal trial based on this evidence in a post-conviction motion. In Wisconsin, recantation evidence is reviewed on such motions under the test set forth in *McCallum.* The circuit court never reached a final determination on the post-conviction motion. Instead, after the court heard testimony from L.S., the parties reached a settlement, resulting in a reduction in Sorenson's 17–year sentence to a 10–year sentence and in his almost immediate release on parole. The record contains almost no evidence identifying the content or the background of L.S.'s recantation testimony.

¶ 25. We conclude that, if the recantation evidence satisfies the test in *McCallum,* any application of issue preclusion to exclude this evidence from Sorenson's ch. 980 trial would be fundamentally unfair to Sorenson under the fifth standard set forth in *Michelle T.* Fundamental unfairness results because Sorenson, assuming the recantation meets the *McCallum* test, has a due process interest in gaining admission at trial of this newly discovered evidence to ensure accurate expert opinions on his mental disorder and

future dangerousness in his ch. 980 trial. In this case, the experts' opinions reveal that they were based heavily on the fact that Sorenson committed the underlying crime. As a result, due process and fundamental fairness require the introduction of this evidence. *See D.M.D. v. State,* 54 Wis. 2d 313, 318, 195 N.W.2d 594 (1972) ("[D]ue process is an exact synonym for fundamental fairness . . . ."); *State v. Johnson,* 118 Wis. 2d 472, 479, 348 N.W.2d 196 (Ct. App. 1984) (the defendant has a right to present crucial evidence to the jury if it is not overcome by substantial competing state interests). In addition, there was never a full and fair determination on the issue of recantation at the circuit court. We determine the application of issue preclusion in this case as a matter of law because its application directly implicates constitutional due process protections afforded to a ch. 980 respondent. *See* Wis. Stat. § 980.05(1m). Due process determinations are questions of law that we decide de novo. *See State v. Littrup,* 164 Wis. 2d 120, 126, 473 N.W.2d 164 (Ct. App. 1991).

¶ 26. We conclude that remand is required for the circuit court to make a determination on the credibility of the recantation evidence pursuant to *McCallum.* In that case, we recognized the inherent unreliability of recantation evidence. However, we held that newly discovered recantation evidence may be sufficient to warrant a withdrawal of a guilty plea if the following criteria are proven by clear and convincing evidence: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; (4) the evidence is not merely cumulative; and (5) the recantation evidence is corroborated by other newly

discovered evidence. *McCallum,* 208 Wis. 2d at 473–74. A defendant may show corroboration under this fifth factor if "(1) there is a feasible motive for the initial false statement; and, (2) there are circumstantial guarantees of the trustworthiness of the recantation." *Id.* at 478. Credibility of the witness is crucial to the application of the legal standard. If these requirements are met, "the circuit court must determine whether there is a reasonable probability that a jury, looking at both the accusation and the recantation, would have a reasonable doubt as to the defendant's guilt. If so, the circuit court must grant a new trial." *Id.* at 475 (citations omitted). None of these determinations have been made.

¶ 27. At a hearing before Sorenson's ch. 980 trial to determine the admissibility of the recantation testimony, the prosecutor questioned whether this evidence would meet the test under *McCallum.* The prosecutor never argued that this evidence did not meet the first four requirements above. Instead, he questioned whether other newly discovered evidence corroborated this testimony. The record in this case, however, contains almost no evidence to show the content or the background of L.S's recantation testimony. We cannot determine from this record whether there is a feasible motive for the initial false statements nor whether there are circumstantial guarantees of trustworthiness of the recantation.

¶ 28. If the recantation evidence meets the test set forth in *McCallum,* a new trial is required because exclusion of this evidence affects fundamental fairness at trial. The State was required to prove the following four elements to show that Sorenson was a sexually violent person under Wis. Stat. ch. 980:

1. That [the person] has been convicted of a sexually violent offense.

2. That at the time the petition was filed, [the person] was within 90 days of [release] from a sentence that ·was imposed for a conviction for a sexually violent offense.

3. That [the person] currently has a mental disorder.

4. That [the person] is dangerous to others because [he] has a mental disorder which creates a substantial probability that [he] will engage in future acts of sexual violence.

Wis JI-Criminal 2502 (footnotes omitted); *see also* Wis. Stat. § 980.02(2). Sorenson argues that his recantation evidence would have been introduced to undercut the State's burden in proving the third and fourth elements. The testimony of the State's experts at Sorenson's ch. 980 trial shows that the experts relied heavily on Sorenson having committed the sexual offense in reaching their evaluation of Sorenson.

¶ 29. The State presented two experts. First, Ingo Stange, a psychologist with the Wisconsin Department of Corrections, testified. Based on an interview with Sorenson and a review of various clinical files, Stange diagnosed Sorenson with pedophilia. He stated that, during his evaluation, he applied several risk factors that are used in determining whether there is a high risk of the person committing sexual assault again. Stange found several risk factors present in Sorenson's case, including multiple victims, repeated sexual intercourse, denials of the underlying crime, and failure to successfully participate in treatment. Based on these risk factors, Stange concluded that Sorenson posed a significant danger.

¶ 30. Second, psychologist Craig Monroe testified for the State. Like Stange, Monroe concluded that Sorenson suffered from pedophilia and that he posed a high risk for future sexual violence. He based his conclusions on several factors, including multiple sexual assaults, sexual intercourse, sexual contact with L.S. showing deviant sexual arousal, and denial or minimization of his criminal activity. Monroe noted that Sorenson's disorder was particularly chronic in light of multiple sexual assaults against L.S. and his contact with children while on parole. Monroe similarly found Sorenson to pose a significant danger.

¶ 31. Thus, both experts relied heavily on Sorenson having committed the underlying sexual assault in their evaluation. Sorenson's ability to counter this evidence was substantially, if not totally, hindered by the exclusion of L.S.'s recantation testimony. Indeed, before trial, Sorenson revealed that L.S.'s recantation had factored into his own expert's testimony. The court's exclusion of this evidence, if it met the *McCallum* test, affected a fair trial.

¶ 32. The State's interests in this instance are not sufficiently substantial to permit the exclusion of such evidence. The two primary interests identified by the State are that such evidence will cause jury confusion and delay. The court can assist to lessen any potential jury confusion by ensuring, through instruction and other means, that any recantation evidence introduced is appropriately applied toward the issues of mental disorder and future dangerousness. Delay in the proceedings may result, but this factor is insufficient to justify the exclusion of such compelling evidence. Neither factor, however, outweighs the interest of Sorenson in introducing such compelling evidence. This evidence

constitutes a significant, if not the only, means for Sorenson to undercut the expert's evaluation of his mental disorder and future dangerousness.

¶ 33. Based on the above, we conclude that remand to the circuit court is required for it to conduct a hearing on L.S.'s recantation testimony and determine whether it meets the test under *McCallum.* If so, the exclusion of this evidence from Sorenson's ch. 980 trial was fundamentally unfair, and Sorenson is entitled to a new trial. Further, if *McCallum* is met, issue preclusion cannot apply as a matter of law based on fundamental fairness. This case involves matters of public policy and individual circumstances "that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action." *Michelle T.,* 173 Wis. 2d at 689 (footnote omitted). A full determination on the effect of the recantation issue on the underlying criminal conviction was never rendered. Fundamental fairness dictates that Sorenson is now provided with an opportunity to present this evidence at his ch. 980 trial.

## C

¶ 34. We specifically reject the State's characterization of Sorenson's argument as a collateral attack on his prior conviction. The State relies primarily on *State v. Hahn,* 2000 WI 118, 238 Wis. 2d 889, 618 N.W.2d 528, for this contention. In *Hahn,* the defendant was charged with two counts of sexual assault, and because he had two prior felony convictions, he was subject to a life sentence without parole under Wisconsin's persistent repeater ("three strikes") law. *Id.* at ¶ 6. The defendant sought to reopen a prior conviction, arguing

that his plea for that conviction was not knowing, intelligent and voluntary and that the court failed to inform him that the conviction could serve as a "strike." *Id.* Following *Custis v. United States,* 511 U.S. 485 (1994), we concluded that, with limited exception, the defendant could not use the sentencing proceeding as the forum in which to challenge the prior conviction. *Hahn,* 2000 WI 118, ¶¶ 4, 17–18, 29.

¶ 35. The State contends that *Hahn* shows that criminal defendants cannot, with limited exception, challenge the validity of their prior criminal convictions in an enhanced sentencing proceeding that is predicated on the prior conviction. In turn, the State asserts that Sorenson cannot challenge the validity of his prior criminal conviction in a ch. 980 proceeding that is predicated on this prior conviction. The State argues that Sorenson's challenge amounts to a collateral attack on his prior criminal conviction. *See Zrimsek v. Am. Auto. Ins. Co.,* 8 Wis. 2d 1, 3, 98 N.W.2d 383 (1959) (a collateral attack is "an attempt to avoid, evade, or deny the force and effect of a judgment in an indirect manner and not in a direct proceeding prescribed by law and instituted for the purpose of vacating, reviewing, or annulling it.").

¶ 36. As the State points out, our *Hahn* decision was also grounded in policy considerations surrounding judicial administration and finality. We cited administrative difficulties in courts not having records of prior convictions or post-conviction proceedings in order to review these prior convictions. *Hahn,* 2000 WI 118, ¶ 25. We also cited an interest in requiring offenders to follow certain established procedures in reviewing convictions. *Id.* at ¶¶ 25, 28. Finally, we noted that concerns of delay and an interest in promoting finality of judgments weighed against reviewing the validity of

convictions at an enhanced sentencing proceeding. *Id.* at ¶ 26. The State contends that these policy considerations also weigh in favor of prohibiting Sorenson from challenging the validity of his conviction at his ch. 980 trial.

¶ 37. In this case, however, unlike the defendant in *Hahn,* Sorenson is not seeking to overturn, void, or otherwise challenge the validity of his prior conviction. He admits that he was convicted and that the State can use this conviction to satisfy the first element for ch. 980 commitment. Sorenson is seeking to introduce evidence to undercut the bases of the State's experts' evaluation of his mental condition. The evidence is introduced to ensure that the trier of fact is making a fair determination as to the defendant's mental disorder and future dangerousness. Sorenson's underlying sexual offense was an essential component of the expert's evaluations and must be based on correct factual information, including compelling newly discovered recantation evidence.

¶ 38. We agree with the State that Sorenson was required to follow appropriate statutory procedures if he seeks to challenge his conviction. He did so in this case, but a full determination was never attained. We also agree that there must be finality in judgments. However, we do not regard his introduction of recantation evidence in this case as an effort to challenge his conviction. Instead, it is introduced to challenge an evaluation of his mental disorder. We do not regard administrative difficulties for the court in reviewing prior proceedings as a compelling policy reason against allowing review of such recantation evidence. Thus, we conclude that neither *Hahn* nor its underlying policy considerations affects our holding in this case.

## III. CONCLUSION

¶ 39. In sum, we remand to the circuit court for additional hearings on the recantation evidence in light of *McCallum*. If the recantation evidence meets the test in *McCallum,* Sorenson is entitled to a new trial at which this evidence must be admitted. Further, issue preclusion cannot apply under such circumstances. Accordingly, the decision of the court of appeals is affirmed with modifications. The cause is therefore remanded for additional hearings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is affirmed.