In re the Commitment of Charles W. Mark:

State of Wisconsin, Petitioner-Respondent,

v.

Charles W. Mark, Respondent-Appellant.†

Court of Appeals

*No. 03–2068. Oral argument November 29, 2004.—Decided March 3, 2005.*

2005 WI App 62

(Also reported in 701 N.W.2d 598.)

† Petition to review granted 7-28-2005.

438

On behalf of the respondent-appellant, the cause was orally argued by and submitted on the briefs of *Glenn L. Cushing*, assistant state public defender, of Madison.

On behalf of the petitioner-respondent,the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and brief and oral argument by *Sally L. Wellman*, assistant attorney general.

Before Vergeront, Lundsten and Higginbotham, JJ.

¶ 1. VERGERONT, J.    Charles W. Mark appeals a judgment following a jury trial finding him to be a sexually violent person under WIS. STAT. ch. 980[1] and ordering his commitment. Mark contends the judgment and order should be reversed and the matter remanded for a new trial on two grounds.

---

[1] All references herein to ch. 980 are to the Wisconsin Statutes (2003–04).

¶ 2. First, Mark asserts that statements to his parole agent that were used against him at trial were compelled and therefore violated the constitutional rights accorded him under WIS. STAT. § 980.05(1m),[2] specifically, the Fifth Amendment right criminal defendants have not to be compelled to testify against themselves and a due process right not to have his involuntary statements admitted. We conclude that certain of the statements—those relating to the woman living next door in his hotel—are incriminating under the definition we employed in *State v. Zanelli (Zanelli II)*, 223 Wis. 2d 545, 589 N.W.2d 687 (Ct. App. 1998). We therefore remand to the circuit court for a determination whether these statements were compelled, and, if so, whether their admission was harmless error. As for the remaining statements, we conclude they are not incriminating under *Zanelli II* and therefore the Fifth Amendment, as existing precedent has applied it under § 980.05(1m), does not bar their admission in a trial under ch. 980. We also conclude that Mark's argument on the due process clause of the Fourteenth Amendment does not provide a basis for excluding statements that are admissible under our Fifth Amendment analysis.

¶ 3. Second, Mark argues that the circuit court erroneously exercised its discretion in excluding evidence concerning the rules of his probation. We conclude, as a matter of law, that this evidence is not relevant to the issue whether Mark was a sexually violent person as defined in WIS. STAT. § 980.01(7). The court therefore did not err in excluding this evidence.

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 4. Accordingly, we affirm in part and remand to the circuit court for further proceedings consistent with this opinion.

## BACKGROUND

¶ 5. Mark was convicted in 1994 on three charges of sexual assault of a child contrary to Wis. Stat. § 948.02(1). He was sentenced to eight years in prison on one charge and sentence was withheld on the other two, with fifteen years of probation ordered on each of these two, consecutive to the prison term and concurrent to each other. Mark was released on parole in May 1999, but his parole was revoked in June 2000, and he was returned to prison to complete his sentence. Shortly before his release date, the State initiated this petition alleging that Mark was a sexually violent person under Wis. Stat. § 980.01(07).

¶ 6. At the trial the State introduced statements made by Mark to his parole agent while he was on parole. Two were written on a form and signed by Mark. At the top of each is the following paragraph preceded by a box with an "X" in it and followed by Mark's initials:

> PROBATIONER/PAROLEE/OFFENDER I have been advised that I must account in a truthful and accurate manner for my whereabouts and activities, and that failure to do so is a violation for which I could be revoked. I have also been advised that none of this information can be used against me in criminal proceedings.

The first of these written statements, dated September 8, 1999, described the contact Mark had with a woman at his church, which, he acknowledged he had not told the truth about because he knew his agent would

442

disapprove. He stated that he had talked to this woman on her porch and seen her fold her underclothes and breast feed her baby, and he imagined her naked. This was a violation of the rule of Mark's supervision on parole that he not enter into a relationship with a woman without prior approval. Mark's parole was not revoked as a result of this incident, but he was given a warning and the rules of his supervision were modified.

¶ 7. The second written statement begins "I screwed up big" and describes an incident at his residential hotel in which he walked into the room of the woman next door, after getting no response to his knock. He then knocked on her bathroom door, which was closed, and heard her say "I'll be out in a minute." When he heard bowel movements, he started pushing on the door to get in because he wanted to see her naked. She pushed from the inside to keep the door closed and yelled "get out of here" about three times. He pushed on the door for five to ten minutes but did not succeed in getting in and he left. Mark stated that he reported this incident to his agent because the woman threatened to call the police.

¶ 8. The State also introduced records of the parole agent relating oral statements made to him by Mark. One was a log kept by the agent noting that about two weeks after Mark signed the written statement on the bathroom incident, he admitted that his motivation was to have sex with the woman. Mark's parole was revoked after this incident, but he was not charged with any crime based on it.

¶ 9. In a second oral statement, contained in a Violation Investigation Report dated February 18, 2000, the officer wrote that Mark had denied and then

admitted certain sexual activity with his stepson, one of the victims of the crimes for which Mark had been convicted.[3]

¶ 10.  Mark's current probation agent testified at the trial and read Mark's statements. The two psychologists called by the State testified that they considered the statements, particularly the bathroom incident, in reaching their conclusions that Mark was a pedophile and there was a substantial probability he would reoffend.[4] In his closing argument, the prosecutor referred to Mark's statements and pointed out the critical role the bathroom incident played in the State's experts' opinions.

¶ 11.  At the time of the trial, Mark was beginning to serve the concurrent fifteen-year terms of probation. Mark wanted to introduce the fact of his probation as well as the rules of his supervision at trial. In response to the State's motion in limine, the court ruled that the evidence was not relevant, although it did allow Mark to establish that he would be on probation for fifteen years.

---

[3] In his first brief, Mark referred to two additional exhibits in describing the statements he was challenging:    one a Violation Investigation Report dated September 10, 1999, based on Mark's written statement about the woman from his church; and the other a Violation/Revocation Summary based on his written statement about the woman who lived at his hotel. Because Mark does not distinguish in his arguments between these reports and the written statements they are based on, we do not treat them separately in our analysis.

[4] The State called a fourth witness, a police officer who interviewed Mark in 1993 and testified to the admissions Mark made to both charged and uncharged sexual assaults. The only witness Mark called was an expert who criticized the actuarial instruments used by the State's experts but did not examine or evaluate Mark.

## DISCUSSION

### I. Admissibility of Mark's Statements

¶ 12. Mark contends on appeal that the admission of his statements violates the rights accorded him under Wis. Stat. § 980.05(1m), which provides:

> **(1m)** At the trial to determine whether the person who is the subject of a petition under s. 980.02 is a sexually violent person, all rules of evidence in criminal actions apply. All constitutional rights available to a defendant in a criminal proceeding are available to the person.

According to Mark, the statements were incriminating and compelled and, thus, both the Fifth Amendment and the due process clause of the Fourteenth Amendment would have prohibited the State from introducing statements against Mark in a criminal proceeding.

### A. Waiver

¶ 13. The State first responds that Mark has waived the right to raise this issue on appeal because his counsel did not object to the admission of these statements before or at trial.[5] Although we do not

---

[5] The State also asserts that, because of the lack of objection, the proper vehicle for review is a claim for ineffective assistance of counsel, which requires that a motion first be brought in the circuit court. Mark responds that there is no statutory provision for postconviction motions in Wis. Stat. ch. 980 proceedings prior to a direct appeal, as there is for criminal proceedings. *See* Wis. Stat. § 809.30. At oral argument, the State agreed there was no statutory provision for postconviction proceedings under ch. 980, but explained that the State has nonetheless not objected to remands for postconviction hear-

445

generally decide issues that are raised for the first time on appeal, we have the authority to do so. *Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980) (*superseded on other grounds by* WIS. STAT. § 895.52). We choose to address Mark's challenge to the admission of his statements because it raises issues significant to ch. 980 proceedings and the parties have fully briefed and argued the issues on appeal.

### B. Fifth Amendment

¶ 14.   By virtue of WIS. STAT. § 980.05(1m), Mark contends, he has the same right under the Fifth Amendment that a criminal defendant has not to be compelled to testify against himself.[6] The Fifth Amendment case law he relies on establishes the principle that if probationers are required to choose between answers that will incriminate them in pending or subsequent criminal prosecutions and loss of their conditional liberty as a price for exercising their right to remain silent, the statements are compelled. *Minnesota v. Murphy*, 465 U.S. 420, 435 (1984); *State v. Evans*, 77 Wis. 2d 225, 232–35, 252 N.W.2d 664 (1977). Such statements

---

ings on ineffective assistance of counsel claims. Because we choose to exercise our power to decide the issue on the merits in spite of waiver, we do not discuss this procedural issue.

Mark also argues that, despite the waiver, he is entitled to a new trial because the admission of the statements was plain error, WIS. STAT. § 901.03(4), and because of the interests of justice. WIS. STAT. § 752.35. Our decision to decide the merits of Mark's claims makes it unnecessary to address these arguments.

[6] The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Article I, Section 8 of the Wisconsin Constitution contains the same prohibition.

are inadmissible for any evidentiary use in criminal proceedings. *State v. Thompson*, 142 Wis. 2d 821, 833–34, 419 N.W.2d 564 (Ct. App. 1987). Mark relies on the definition of incriminating in *Rhode Island v. Innis*, 446 U.S. 291, 301 n.5 (1980): "any response – whether inculpatory or exculpatory—that the *prosecution* may seek to introduce at trial."

¶ 15.   The State responds that, because ch. 980 is a civil not a criminal proceeding and the Fifth Amendment by its terms applies only to criminal proceedings, neither Wis. Stat. § 980.05(1m) nor the Fifth Amendment requires suppression of Mark's statements in this ch. 980 trial. What he is entitled to, the State asserts, is not to have the statements used against him in a criminal trial, and that has not happened.

¶ 16.   The parties' arguments depend in large part on their views of three cases that have considered whether various aspects of Fifth Amendment law apply in a ch. 980 trial by virtue of Wis. Stat. § 980.05(1m):   *State v. Zanelli* (*Zanelli I*), 212 Wis. 2d 358, 569 N.W.2d 301 (Ct. App. 1997); *Zanelli II*, 223 Wis. 2d 545; and *State v. Lombard* (*Lombard I*), 2004 WI 95, 273 Wis. 2d 538, 684 N.W.2d 103. Because of the importance of these cases to a resolution of this appeal, we discuss each before addressing the parties' arguments in more detail.

¶ 17.   In *Zanelli I* we considered Zanelli's contentions that under Wis. Stat. § 980.05(1m) he had a right to remain silent in a ch. 980 proceeding, and this right was violated by the State's introduction at trial of testimony that he had refused to participate in a prepetition psychological evaluation and by the prosecutor's comment in closing argument on this refusal. 212 Wis. 2d at 369. We first concluded that § 980.05(1m) did make applicable to Zanelli the Fifth

Amendment right to remain silent that a defendant would have in a criminal proceeding. *Id.* at 370–71. We next examined the right a criminal defendant would have at trial with respect to the right to remain silent. *Id.* at 371. A criminal defendant would have, we explained, the right to remain silent prior to an arrest or custodial interrogation whether or not the defendant had received a *Miranda*[7] warning; that right would be violated if the prosecution commented on a defendant's prearrest silence unless the defendant chose to testify. *Id.* at 371–72 (citations omitted). Because of § 980.05(1m), we concluded that Zanelli had this same right, which was violated by the witnesses' testimony on Zanelli's silence and the prosecution's comment on it. *Id.* at 372. We therefore reversed the judgment that Zanelli was a sexually violent person and remanded for a new trial. *Id.*

¶ 18. In *Zanelli II* we considered Zanelli's contention that the admission at his second trial of his statements to his probation officers violated the Fifth Amendment made applicable to him by Wis. Stat. § 980.05(1m). 223 Wis. 2d at 567. The Fifth Amendment case law, we explained, established that if probationers are required to choose between giving answers that will incriminate them in pending or subsequent criminal prosecution and losing their conditional liberty as a price for exercising their right to remain silent, the State may not use the answers for any evidentiary purpose in a criminal prosecution. *Id.* at 568–69 (citing *Murphy*, 465 U.S. at 435, and *Thompson*, 142 Wis. 2d at 832). After noting that Zanelli had not set forth facts to establish that he was compelled to choose between

---

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

giving answers that would incriminate him and risking revocation of his constitutional liberty, we stated:

> A review of the record reveals that [probation officers] testified regarding the 1977 and 1991–92 matters for which Zanelli had already been convicted, so such statements could not subject Zanelli to future criminal prosecution. Further, any statements about Zanelli's background, including his employment and family, could not, by themselves, incriminate Zanelli in a subsequent criminal prosecution. The fact that such statements can be used in a ch. 980, Stats., case does not mean that the statements could incriminate him in a pending or subsequent criminal prosecution as ch. 980 is a civil commitment proceeding, not a criminal proceeding. *See State v. Carpenter*, 197 Wis. 2d 252, 270–72, 541 N.W.2d 105, 112–13 (1995). Accordingly, the statements were admissible.

*Id.* at 568.

¶ 19. In *Lombard I* the issue concerned the admissibility of the respondent's statements to the State's psychologist during an interview to determine if a petition under ch. 980 should be filed. Lombard contended that by virtue of WIS. STAT. § 980.05(1m), he was entitled to a *Miranda* warning before the interview, just as a criminal defendant in custody would be before an interview by a State psychologist. 273 Wis. 2d 538, ¶¶ 20–23. The court concluded that § 980.05(1m) plainly made the constitutional rights described applicable only "at the trial," *id.*, ¶ 37, and therefore the statute did not afford Lombard any right during the prepetition phase. The court went on to explain that this ruling was consistent with both *Zanelli I* and *Zanelli II*. Because *Zanelli I* addressed only the right to remain silent, the court stated, it did not support the right to *Miranda* warnings. *Id.*, ¶ 40. As for *Zanelli II*,

after summarizing our conclusion there—that Zanelli's statements to his probation officers were properly admitted because they concerned crimes for which he had already been convicted and thus he was not subject to future criminal prosecution—the court said:

> We conclude that the reasoning in *Zanelli II*, concerning crimes for which Zanelli had already been convicted, is directly applicable to this case. Here, Lombard was already convicted for the underlying sexual assault offenses that led to his ch. 980 commitment as a sexually violent person. Thus, any statements Lombard made to Jurek regarding those assaults could not be used against him in future prosecutions. We agree with the court of appeals in this case that "[t]he purpose of the examiner's interview was to evaluate Lombard for the purposes of a potential 'civil commitment proceeding, not a criminal proceeding,' and the examiner was not required to comply with *Miranda's* dictates." . . . (citation omitted).

*Id.*, ¶ 42.

¶ 20. Mark's position is that *Zanelli II* was wrongly decided because we employed there a narrow definition of incriminating that is at odds with *Innis*, 446 U.S. at 301 n.5. However, the issue at bottom is not the correct application of the Fifth Amendment but the correct construction and application of Wis. Stat. § 980.05(1m), an issue of state law. We are therefore bound to follow *Zanelli II*, and this is especially the case after the supreme court quoted it with approval in *Lombard I. See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

¶ 21. The State offers two readings of *Lombard I*, both supporting its position that Mark's statements are admissible. First, the State focuses on the court's em-

phasis that a ch. 980 proceeding is a civil proceeding, not a criminal proceeding, and argues that there are therefore no Fifth Amendment rights in a ch. 980 proceeding. This was one of the arguments the State made in *Lombard I*, 273 Wis. 2d 538, ¶¶ 24–25, but it is not the one the court adopted. Rather, the court adopted the State's other argument—that Wis. Stat. § 980.05(1m) affords respondents the constitutional rights available to a defendant in a criminal proceeding only "at the trial." *Id.*, ¶¶ 2, 37. This construction of the statute necessarily recognizes that, *even though* a ch. 980 proceeding is a civil proceeding, at the trial the respondent has the constitutional rights available to a defendant in a criminal proceeding. This is not an impermissible expansion of the substance of the constitutional provisions themselves, as the State suggested at oral argument. Rather, it is a recognition that the legislature intended to accord to ch. 980 respondents the constitutional protections that apply at trial in criminal proceedings. We understand the *Lombard I* court's emphasis in ¶ 42 on the civil nature of ch. 980 proceedings to be the court's explanation why use of the challenged statement in a ch. 980 proceeding does not constitute use in a criminal proceeding. We do not understand it to be a holding that Fifth Amendment rights are excluded entirely from the constitutional rights the legislature has chosen, through the enactment of § 980.05(1m), to accord respondents at trial.

¶ 22. The second reading of *Lombard I* offered by the State focuses on the court's construction of "[a]t the trial" in Wis. Stat. § 980.05(1m). Because Mark's statements were made prepetition, the State asserts that he is not protected from their use at trial, even if the statements are incriminating and were compelled. While this is a logical reading of paragraph 37 in

*Lombard I*, we cannot reconcile it with the court's discussion of *Zanelli II* in paragraphs 41–42 of *Lombard I*.[8] As we have already noted, the court there approves of our analysis in *Zanelli II* and applies it to *Lombard*: the premise of that analysis is that a ch. 980 respondent is protected from the use of a compelled statement in a ch. 980 trial if that statement could subject him to a future criminal prosecution. In essence, the State reads *Lombard I* to overrule *Zanelli I* and *Zanelli II*. We cannot adopt that reading in view of the court's express approval of both.

¶ 23. We conclude the better reading of *Lombard I* is that it holds a ch. 980 respondent is not entitled to prepetition *Miranda* warnings and leaves intact our rulings in *Zanelli I* and *Zanelli II*. Because Mark's appeal concerns allegedly compelled statements, not a respondent's silence (*Zanelli I*) and not a challenge based on lack of *Miranda* warnings (*Lombard I*), the applicable case is *Zanelli II*.

¶ 24. In *Zanelli II*, in applying the Fifth Amendment to that respondent, we analyzed the challenged statements to determine if they were incriminating. The definition of incriminating we employed was that a statement is incriminating if it could incriminate a respondent in a subsequent criminal prosecution. 223 Wis. 2d at 568. Although we had no difficulty in applying this definition in *Zanelli II*, when now faced with a different set of facts, we see at least two problems with the definition. First, it requires us to

---

[8] It is also not consistent with the *Lombard I* court's approval of our ruling in *Zanelli I* that "a person subject to a pre-petition evaluation has the right to remain silent pursuant to Wis. Stat. § 980.05(1m)." *Lombard I*, 273 Wis. 2d 538, ¶ 40.

decide whether a statement is or is not admissible in one proceeding (under ch. 980) based on whether it would be incriminating in another proceeding—a future, hypothetical criminal proceeding. We cannot readily articulate a rationale for excluding a statement in a ch. 980 trial because it would be incriminating in a future, hypothetical criminal proceeding. The second and related problem is that it may not always be apparent what would be incriminating in a future, hypothetical criminal proceeding. Although we conclude we are bound by *Zanelli II*, we believe that courts and litigants would benefit from a supreme court review of our analysis in that case, as well as a clarification of the related paragraphs in *Lombard I. See* ¶ 22 above.[9]

---

[9] More specifically, statements in both *Zanelli II*, 223 Wis. 2d at 568–69 and *Lombard I*, 273 Wis. 2d 538, ¶¶ 37–42, that speak in terms of the Fifth Amendment right not to be questioned under some circumstances are not consistent with the relevant protection accorded by the Fifth Amendment. WISCONSIN STAT. § 980.05(1m) provides that "[a]ll constitutional rights available to a defendant in a criminal proceeding are available to" ch. 980 respondents in a "trial to determine whether the person . . . is a sexually violent person." The constitutional *trial* right afforded by the Fifth Amendment's self-incrimination clause protects defendants against the *use* of compelled self-incrimination at trial. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990) ("The privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants. Although conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial."). Thus, it would seem that the pertinent question is not whether a ch. 980 respondent's constitutional rights were violated *at the time* the respondent made a prepetition statement, but instead whether the admission of the statement at the ch. 980 trial would violate the Fifth Amendment if the proceeding were a criminal trial.

### 1. Incriminating

¶ 25. Following *Zanelli II*, we now consider whether the challenged statements would subject Mark to a future criminal proceeding.

Refocusing attention on admissibility at Mark's trial suggests another important question. Regardless of plain language, courts must still question whether a particular application of a statute produces an unreasonable result unintended by the legislature. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. Thus, a significant question is whether the legislature intended to prohibit at ch. 980 trials the use of *all* statements made by respondents that would be inadmissible under a Fifth Amendment analysis if offered by the State in a criminal trial. How this question is answered has far-reaching implications for ch. 980 trials because these trials commonly include the admission of respondent statements made to agents of the State while the respondent was in custody or under supervision.

When addressing a related Wis. Stat. § 980.05(1m) issue regarding the offensive use of issue preclusion by the State in a ch. 980 proceeding (which use we assumed would not be permitted in a criminal trial), we used this analysis:

> [The ch. 980 respondent's] interpretation of [Wis. Stat. § 980.05(1m)] would mark a dramatic shift in how Chapter 980 trials are conducted, requiring a retrial of prior sexual assault convictions even though the person in question has previously been found guilty of the offense beyond a reasonable doubt. Absent a stipulation by a respondent, his sexual assault victim or victims from these prior cases would be required to endure a second trial.
>
> We do not believe that the legislature intended to subject victims and their families to the ordeal of a second trial when the respondent has already been found guilty of that crime beyond a reasonable doubt. If the legislature had intended this to be the procedure in Chapter 980 trials, it would have provided so expressly.

■

¶ 26. Addressing first Mark's oral admission to his parole officer about sexual activity with his stepson, we understand this conduct to relate to the offenses for which Mark was charged and convicted. Neither in his briefs nor at oral argument did Mark explain why this statement might subject Mark to a *future* criminal proceeding. We therefore conclude this statement is not incriminating under *Zanelli II*.

■

¶ 27. Regarding the written statement about the woman from Mark's church, Mark's counsel acknowledged at oral argument that it was difficult to argue this statement would subject Mark to future criminal prosecution. We agree. We see no readily apparently criminal law that Mark might have violated in his contacts with this woman as described in his statement, and we decline to develop this argument further on Mark's behalf. We therefore conclude this statement is not incriminating under *Zanelli II*.

---

*In re Commitment of Sorenson*, 2001 WI App 251, ¶¶ 25–26, 248 Wis. 2d 237, 635 N.W.2d 787. On review of our decision, the supreme court found it unnecessary to address the legislative intent analysis used by this court. *See Sorenson*, 2002 WI 78, ¶¶ 11, 15–16, 21–22, 25, 254 Wis. 2d 54, 646 N.W.2d 354 (Instead, the supreme court assumed for argument's sake that the State could use issue preclusion offensively in a ch. 980 trial and decided that its use, in light of the particular facts of that case, was unfair to Sorenson. *Id.*, ¶¶ 22, 25.). We refer to our analysis in *Sorenson* because it suggests that the legislature may not have intended some of the consequences of the language it used in Wis. Stat. § 980.05(1m) and some of those consequences might appropriately be characterized as unreasonable.

In any event, in view of *Zanelli II* and *Lombard I*, these questions must be resolved by the supreme court, not this court.

¶ 28. We reach a different conclusion regarding Mark's statements about the woman who lived at his hotel. Mark's position is that these statements provide a basis for a charge of attempted sexual assault. That is most likely true, given Mark's oral admission that his motivation was to have sex. At a minimum, the written statement could subject Mark to prosecution for disorderly conduct under WIS. STAT. § 947.01. We therefore conclude that this written statement and the later oral admission are incriminating under the definition used in *Zanelli II*, and we proceed to decide whether they were also compelled.

2. Compelled

¶ 29. Mark's position is that the following evidence establishes that his statements to his parole agent about the woman who lived at his hotel were compelled: (1) according to the "Violation/Revocation Summary," he was placed in custody on April 25, 2000, made the written statement on April 28, 2000, and the oral statement thereafter; (2) the written statement form advised him that his probation could be revoked if he did not make a truthful account of his activities; (3) according to Mark's current probation agent's testimony, the statements were made to the officer investigating allegations that Mark entered the woman's residence at the hotel without permission, attempted to force his way into her bathroom without permission, and wrote her a note that he wanted to see her naked.

¶ 30. The State disagrees and, while noting that the record on this point is sparse, argues that it shows the statement was voluntary. The State relies on the Violation/Revocation Summary, which states that Mark

"reported to the agent that he 'screwed up big.' "[10] This shows, in the State's view, that Mark initiated the contact and the subsequent confession.

¶ 31.   We conclude that the present record permits competing reasonable inferences on whether Mark's statements on the incident with the woman who lived at his hotel were compelled within the meaning of *Murphy*, *Evans*, and *Thompson*. Because it is not our role to find facts, and because the record in any event is not well developed on this issue, we conclude that a remand is necessary. A remand will permit the circuit court to take evidence on the issue of the voluntariness of these statements and to make findings of fact based on that evidence. Because a harmless error analysis applies to compelled confessions, *Arizona v. Fulminante*, 499 U.S. 279, 295 (1991), the circuit court will also need to undertake that analysis if it determines that any statement on the incident with the woman who lived at Mark's hotel was compelled.

C. Fourteenth Amendment Due Process Clause

¶ 32.   Mark contends that, even if some of his statements are not incriminating for purposes of the Fifth Amendment as we applied it in *Zanelli II*, they are inadmissible under a distinct protection afforded a criminal defendant by the due process clause of the

---

[10] The report states in part:

On 4/25/00, Charles Mark reported to the agent that he "screwed up big," and revealed violations 1 and 2, along with the complaint that he was accused of stalking the victim, [JC]. An apprehension request was issued upon receipt of the subject's self reported violations, and he voluntarily turned himself in to police on 4/25/00.

457

Fourteenth Amendment.[11] The due process clause, he argues, prevents the use of any involuntary statement against a criminal defendant and, thus, he has that right under WIS. STAT. § 980.05(1m) regardless of how we apply the Fifth Amendment. The cases he relies on are *Mincey v. Arizona*, 437 U.S. 385, 398 (1978); *Thompson*, 142 Wis. 2d at 833; and *State v. Hoppe*, 2003 WI 43, ¶ 36, 261 Wis. 2d 294, 661 N.W.2d 407.

¶ 33. We conclude the case law does not support Mark's position that the due process clause affords criminal defendants a protection against use of his or her involuntary statements in a criminal proceeding that is not afforded by the Fifth Amendment. Instead, with respect to the use of a defendant's involuntary statements in criminal cases, the rights conferred by the due process clause and the Fifth Amendment are coextensive.

¶ 34. In *Malloy v. Hogan*, 378 U.S. 1, 3, 6, 10 (1964), the Supreme Court held that that the Fourteenth Amendment guaranteed a defendant in a state proceeding the same protection of the Fifth Amendment's privilege against compelled self-incrimination that applied in a federal proceeding. Earlier, it had been unsettled whether that was the case, and the prohibition against a state's use of coerced confessions had been articulated as a requirement of the due process clause of the Fourteenth Amendment. *Id.* at 4–8. *See, e.g., Rogers v. Richmond*, 365 U.S. 534, 541 (1961). However, the Court in *Malloy* made clear that the proper inquiry when a confession was chal-

---

[11] The Fourteenth Amendment provides in part that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

lenged in state court as involuntary was the same as the inquiry required by the Fifth Amendment: was the person compelled to incriminate himself or herself. 378 U.S. at 7.

¶ 35. The cases on which Mark relies do not suggest otherwise. The language that Mark quotes from *Mincey*, 437 U.S. at 398—"*any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process 'even though there is ample evidence aside from the confession to support the conviction' "—is the expression of the Court's view at that time that a coerced confession was not subject to a harmless error analysis.[12]

¶ 36. The language Mark cites from *Thompson* is our statement that the defendant's "fifth amendment privilege and his fourteenth amendment right to due process prevented the state from making any evidentiary use whatever in these criminal proceedings of his answers to [the] questions." 142 Wis. 2d at 833. This summarizes our conclusion that *Murphy*, *Mincey*, and *New Jersey v. Potash*, 440 U.S. 450, 459 (1979), prevented the use of the probationer's compelled statement not only for the State's case-in-chief but also for impeachment or rebuttal. *Thompson*, 142 Wis. 2d at 830–33. *See* ¶ 14 above.[13]

---

[12] *Mincey v. Arizona*, 437 U.S. 385, 397 (1978), was decided before the Court in *Arizona v. Fulminante*, 499 U.S. 279, 295 (1991), held that a coerced confession was subject to a harmless error analysis.

[13] We went on in *Thompson* to decide that under *Mincey* it was not proper to employ a harmless error analysis and instead an automatic reversal was required. 142 Wis. 2d at 834–36. However, that conclusion is no longer correct after *Fulminante*, 499 U.S. at 295.

¶ 37. Finally, Mark refers to *Hoppe*, where the court states: "If Hoppe's statements were involuntary, the admission of the statements would violate his due process right under the Fourteenth Amendment of the U.S. Constitution and Article I, Section 8 of the Wisconsin Constitution. *Rogers v. Richmond*, 365 U.S. 534, 540 (1961)." 261 Wis. 2d at 309. As we have noted above in paragraph 34, *Rogers* was decided before the Supreme Court in *Malloy* established that the Fifth Amendment privilege against self-incrimination applied in state proceedings because of the due process clause of the Fourteenth Amendment.

¶ 38. In short, none of the cases Mark cites, nor any we have been able to locate, support his position that the analysis under the due process clause of the Fourteenth Amendment is different than under the Fifth Amendment when a criminal defendant challenges the State's use of his or her compelled statement. Accordingly, we conclude that Mark's argument on the due process clause does not provide a basis for excluding statements that are admissible under our Fifth Amendment analysis.[14]

I. Admissibility of Probation Rules

¶ 39. The purpose of a trial under Wis. Stat. § 980.05 is to determine if the "subject of a petition

---

[14] The State at oral argument acknowledged that in a civil proceeding brought by the State the due process clause might prohibit the State's use of a person's involuntary statement against him or her, depending on the circumstances. We do not address this issue. Mark's arguments are based on the provision in Wis. Stat. § 980.05(1m) according him the rights at trial that a defendant has in a criminal proceeding. He does not develop an argument that, independent of that provision, the use of his statements against him offended his right to due process in a civil proceeding.

under s. 980.02 is a sexually·violent person . . . ." Section 980.05(1). A "sexually violent" person means:

> a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect, or illness, and who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in acts of sexual violence.

WIS. STAT. § 980.01(7). A "mental disorder" is defined as: "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." Subsection (2).

¶ 40. Mark submitted as an offer of proof the rules that he is or would be subject to during his two concurrent fifteen-year terms of probation. The rules include: reporting to his agent as required, completing sex-offender treatment, no contact with anyone under eighteen unless supervised by his agent, restricted hours away from his residence, and the prior approval of his agent for where and with whom he lives, any dating relationship with a woman, and frequenting places where there are children. The circuit court concluded that, as a matter of law, these rules were not relevant to whether Mark was a sexually violent person because the statute defined that term without reference to levels of supervision; the court acknowledged that the rules would become relevant if and when the question whether to order supervised release was before the court.

¶ 41. Mark contends the court's ruling was an erroneous exercise of discretion because the probation rules are relevant to his future dangerousness, which is part of the definition of a sexually violent person under WIS. STAT. § 980.01(7).

¶ 42. In most instances, the question of relevancy calls for the exercise of the circuit court's discretion, and we review such decisions under a deferential standard. *State v. Richard G.B.*, 2003 WI App 13, ¶ 7, 259 Wis. 2d 730, 656 N.W.2d 469. However, the decision challenged here is not based on the court's assessment of relevancy given the issues of fact and law in this particular case, but on the court's construction of WIS. STAT. § 980.01(7) and related provisions. Whether the court's construction is correct presents a question of law, which we review de novo. *Id.*

¶ 43. When construing a statute, we begin with the language of the statute and give it its common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context in which it is used, not in isolation, but as part of a whole, in relation to the language of surrounding or closely related statutes, and reasonably to avoid absurd or unreasonable results. *Id.*, ¶ 46. We also consider the scope, context, and purpose of the statute insofar as they are ascertainable from the text and structure of the statute itself. *Id.*, ¶ 48. If, employing these principles, statutory language is unambiguous—that is, there is only one reasonable meaning—then we apply this plain meaning. *Id.*, ¶ 46.

¶ 44. There are two recent cases relevant to our analysis of this issue, although neither fully resolves it: *State v. Lombard* (*Lombard II*), 2004 WI App 52, 271 Wis. 2d 529, 678 N.W.2d 338, and *State v. Thiel*, 2004 WI App 140, 275 Wis. 2d 421, 685 N.W.2d 890. In

*Lombard II* the issue was whether the court erred in refusing to answer a jury's question: if Lombard were determined not to still be a sexually violent person and were discharged, would he be supervised or not? 271 Wis. 2d 529, ¶ 6. (Lombard had already been adjudicated a sexually violent person and the trial was on his petition for discharge. *Id.*, ¶ 2.). Instead of answering the jury's question, the court instructed the jury not to be concerned with what would happen as a result of its answer to the verdict question. *Id.*, ¶ 7. Defense counsel argued that the court should have referred to the evidence that Lombard would be on a combination of parole and probation for forty years because of his criminal convictions. *Id.* We concluded the court acted reasonably in deciding that evidence of whether Lombard would be supervised as a result of his convictions was not relevant to the question the jury had to answer—whether Lombard was still a sexually violent person.

> The answer to that question, as the jury was instructed, depended upon whether Lombard had a mental disorder that created a substantial probability he would engage in future acts of sexual violence. The jury was not asked to decide whether there were conditions that would make Lombard less dangerous if he were discharged.

*Id.*, ¶ 16.

¶ 45. Arguably, *Lombard II* is distinguishable because there counsel acknowledged there was no evidence of what the rules of supervision would be. In addition, because we addressed the issue as an exercise of the court's discretion in answering a jury question, we did not answer the question whether, as a matter of law, evidence of future parole and probation was relevant.

¶ 46. In *Thiel* the issue was whether the recommendation of an independent examiner that Thiel be granted supervised release from a ch. 980 commitment was sufficient to establish the probable cause necessary to warrant a full evidentiary hearing on whether he was still a sexually violent person. 275 Wis. 2d 421, ¶ 13. *See* Wis. Stat. § 980.09(2).[15] Based on our construction of Wis. Stat. §§ 980.01(7) and 980.09(2)(a), we concluded it was not sufficient:

> By the plain language of the statute, the question at the probable cause hearing is not whether the individual is substantially probable to engage in acts of sexual violence if placed on supervised release or even if discharged from commitment; the statute draws no such distinction. Rather, the question at the probable cause stage is simply whether it is substantially prob-

---

[15] Wisconsin Stat. § 980.09(2) provides:

(2) Petition without secretary's approval. (a) A person may petition the committing court for discharge from custody or supervision without the secretary's approval . . . . If the person does not affirmatively waive the right to petition, the court shall set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person . . . .

(b) If the court determines at the probable cause hearing under par. (a) that probable cause exists to believe that the committed person is no longer a sexually violent person, then the court shall set a hearing on the issue . . . . At the hearing, the state has the burden of proving by clear and convincing evidence that the committed person is still a sexually violent person.

(c) If the court is satisfied that the state has not met its burden of proof under par. (b), the person shall be discharged from the custody or supervision of the department. If the court is satisfied that the state has met its burden of proof under par. (b), the court may proceed to determine, using the criteria specified in s. 980.08(4)(b), whether to modify the person's existing commitment order by authorizing supervised release.

able that the person will engage in acts of sexual violence without regard to any specific restrictions, supervision or time frame. It is a black-and-white determination—it is either substantially probable that the person will engage in acts of sexual violence or it is not.

*Id.*, ¶ 17. We added that supervision restrictions become relevant if there is a determination of probable cause in the committed person's favor and the State then proves at the evidentiary hearing that he or she is still a sexually violent person. *Id.*, ¶¶ 19, 20. In that case the court may consider, "using the criterion specified in s. 980.08(4)(b) [governing petitions for supervised release], whether to modify the person's existing commitment order by authorizing supervised release." Section 980.09(2)(c).

¶ 47. Consistent with our analysis in *Thiel* and *Lombard II*, we now hold that evidence that a ch. 980 respondent will be on probation or parole if not adjudicated and committed as a sexually violent person is not relevant to the determination whether the respondent is a sexually violent person as defined in WIS. STAT. § 980.01(7); nor are the rules of any such probation or parole relevant to that determination. Section 980.01(7) plainly defines dangerousness as "dangerous because [the person] suffers from a mental disorder that makes it likely that the person will engage in acts of sexual violence," without regard to the nature of the restraint or supervision imposed on the person. Neither the detailed subsection on the allegations the petition must contain, § 980.02, nor the subsections on the probable cause hearing and trial, WIS. STAT. §§ 980.04 and 980.05, give any indication that the existence or

465

degree of supervision if the person is not committed is relevant to the determination whether the person is sexually violent.

¶ 48. Moreover, the construction Mark proposes would base that determination on facts that might change after the petition is dismissed. In Mark's view, some rules of his probation make it less likely that he will reoffend in the future, and he emphasizes that in his situation the rules are known. However, the list of rules specifically states that "The rules may be modified at any time, as appropriate." It is not reasonable to look to rules of supervision that are subject to change as a basis for deciding whether a person should be committed because he or she is likely to engage in future acts of sexual violence. We are convinced the legislature did not intend this.

¶ 49. We agree with the circuit court that evidence of the rules of Mark's probation is not relevant as a matter of law. The court therefore properly granted the State's motion to exclude this evidence.

## CONCLUSION

¶ 50. We conclude that Mark's statements relating to the woman living next door at his hotel are incriminating under the definition we employed in *Zanelli II*, and a remand is necessary as to these statements. The remaining statements were not erroneously admitted because they are not incriminating under *Zanelli II*; and Mark's argument on the due process clause of the Fourteenth Amendment does not provide a basis for excluding statements that are admissible under our Fifth Amendment analysis in *Zanelli II*. We also conclude the circuit court properly excluded evidence of the rules of Mark's probation because, as a matter of law, they are not relevant to the

determination whether Mark is a sexually violent person as defined in Wis. Stat. § 980.01(7).

¶ 51. On remand the circuit court shall determine whether the statements we have identified as incriminating were compelled, and if they were, if their admission was harmless error. If the court determines that one or more statements were compelled and the admission was not harmless, then the court must vacate the judgment and order, and Mark is entitled to a new trial. If, on the other hand, the court determines either that no statement was compelled or that, if any were, the admission was harmless, then the judgment and order will remain in effect.

*By the Court.*—Judgment and order affirmed in part and cause remanded with directions.