In re the Commitment of Owen Budd:

State of Wisconsin,
Petitioner-Respondent,

v.

Owen Budd,
Respondent-Appellant.

Court of Appeals

*No. 2007AP11. Submitted on briefs August 7, 2007.*
*—Decided October 4, 2007.*

2007 WI App 245

(Also reported in 742 N.W.2d 887.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Steven P. Weiss*, assistant state public defender of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Jonathan J. Kinkel*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Dykman, Vergeront and Bridge, JJ.

¶ 1. DYKMAN, J. Owen Budd appeals from an order committing him to institutional care in a secure mental health facility on the finding that Budd is a sexually violent person under WIS. STAT. § 980.01(7) (2005–06).[1] Budd contends that the trial court erred in excluding evidence that Budd would be on supervision if not committed under WIS. STAT. ch. 980, and in admitting evidence of the Department of Corrections' (DOC) screening process for selecting sex offenders for ch. 980 proceedings. Budd contends that he should be granted a new trial in the interest of justice because the real issue of Budd's likelihood to commit a crime of sexual violence was not fully or fairly tried. We conclude that the State's evidence as to the DOC's screening process for potential ch. 980 cases was irrelevant and therefore should not have been admitted, and that the court's error in admitting that evidence was not harmless. We therefore reverse and remand for proceedings consistent with this opinion.

*Background*

¶ 2. The following facts are undisputed. Budd was convicted of a sexually violent offense and incarcerated;

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

he was scheduled for release from prison in January 2006. Prior to Budd's anticipated release date, the State filed a petition to detain Budd as a sexually violent person under WIS. STAT. ch. 980. At the probable cause hearing, Dr. Cynthia Marsh, a psychologist employed by the DOC, testified for the State. Marsh testified that she evaluated Budd and determined that he was more likely than not to re-offend. Following the hearing, the trial court found that the evidence established probable cause to believe Budd was a sexually violent person and ordered Budd detained until trial.

¶ 3. Prior to trial, the court granted the State's motion in limine to bar any evidence that Budd would be under supervision following his release from prison. The court denied Budd's motion to exclude evidence of the screening process that results in a sex offender being recommended for WIS. STAT. ch. 980 proceedings.

¶ 4. At trial, Marsh again testified for the State that Budd meets the criteria for civil commitment under WIS. STAT. ch. 980 as a sexually violent person. Marsh testified that she conducts sex-offender evaluations for the DOC. She stated that her workload comes from the End of Confinement Review Boards (ECRB). She explained that the chairman of the ECRB screens all sex offenders that are scheduled for release from Wisconsin state prisons every year, and refers about twenty-five percent to the ECRB. The ECRB decides that about fifty percent of those cases require a special purpose evaluation, and those are sent to Marsh and her colleagues. Marsh testified that she and the other special evaluators recommend about a third of the cases to the Department of Justice for ch. 980 proceedings. The assistant attorney general then elicited a reiteration from Marsh that the original screening eliminates seventy-five percent of sex offenders for potential evalu-

ation, the ECRB reduces the remaining group by another fifty percent, and that finally an even smaller group are referred on for ch. 980 proceedings.

¶ 5. In closing argument, Budd's counsel posed a question as to whether Marsh was biased based on a statement she made that she would not give Budd the benefit of the doubt due to the screening process he had already been through prior to arriving in court. In rebuttal, the State argued that Marsh's statement that she does not recommend WIS. STAT. ch. 980 proceedings for seventy percent of the cases she gets assigned, which have already been thinned out, shows that she is not biased, and is actually conservative in her recommendations.

¶ 6. In contrast to Marsh's testimony, three experts[2] testified that Budd does not meet the criteria for commitment under WIS. STAT. ch. 980. The jury found that Budd is a sexually violent person. The court committed Budd to institutional care in a secure mental health facility, and Budd appeals.

### Standard of Review

¶ 7. Whether or not to admit evidence is generally within the circuit court's discretion. *State v. Richard G.B.*, 2003 WI App 13, ¶ 7, 259 Wis. 2d 730, 656 N.W.2d 469. However, "if an evidentiary issue requires construction or application of a statute to a set of facts, a question of law is presented, and our review is de novo." *Id.* Because the trial court's evidentiary decisions challenged in this appeal are based on the court's construc-

---

[2] One of the experts was appointed by the court, and two were selected by Budd.

tion of Wis. Stat. § 980.01(7), we review the court's decision independently. *See State v. Mark*, 2005 WI App 62, ¶ 42, 280 Wis. 2d 436, 701 N.W.2d 598.

*Discussion*

¶ 8. Budd contends that the trial court erred in granting the State's motion to exclude evidence of the fact that he would remain under supervision upon release and denying his motion to exclude evidence of the DOC's screening process for potential Wis. Stat. ch. 980 cases. We disagree that the court erred in excluding evidence that Budd would be on supervision if released from prison, but agree that the court erred in admitting the State's evidence of the DOC's screening process for potential ch. 980 cases.

¶ 9. Budd first argues that the court's decision to exclude evidence of the fact that he will be on supervision when released resulted from the court's erroneous interpretation of the supreme court's analysis in *State v. Mark*, 2006 WI 78, 292 Wis. 2d 1, 718 N.W.2d 90. In *State v. Mark*, 280 Wis. 2d 436, ¶ 3, we addressed Mark's argument that the trial court erred in excluding evidence of the rules of his probation. We concluded that the evidence as to Mark's rules of probation were not relevant to whether Mark was a sexually violent person as defined under Wis. Stat. § 980.01(7), and therefore affirmed the circuit court's decision to exclude the evidence. *Id.*

¶ 10. In reaching that decision, we construed Wis. Stat. § 980.01(7) to determine whether a respondent's future rules of supervision were relevant to whether that person was a sexually violent person. *Id.*, ¶¶ 39–49. We explained that "[t]he purpose of a trial

under WIS. STAT. § 980.05 is to determine if the 'subject of a petition under [WIS. STAT.] s. 980.02 is a sexually violent person.' "[3] *Id.*, ¶ 39 (quoting WIS. STAT. § 980.05(1)).

¶ 11. We relied on two cases pertinent to the issue, *State v. Lombard (Lombard II)*, 2004 WI App 52, 271 Wis. 2d 259, 678 N.W.2d 338, and *State v. Thiel*, 2004 WI App 140, 275 Wis. 2d 421, 685 N.W.2d 890. In *Lombard II*, we held that the trial court acted reasonably in refusing to answer the jury's question following trial on Lombard's petition for discharge from WIS. STAT. ch. 980 commitment as to whether Lombard would be supervised if discharged. *Mark*, 280 Wis. 2d 436, ¶ 44. We explained that the court did not erroneously exercise its discretion in finding that the jury was not to concern itself with whether Lombard would be supervised if discharged. *Id.*, ¶¶ 44–45.

¶ 12. In *Thiel*, we concluded that the recommendation of an independent examiner that Thiel be granted supervised release from a WIS. STAT. ch. 980 commitment was not sufficient to establish probable cause warranting a full evidentiary hearing on whether he was still a sexually violent person. *Mark*, 280 Wis. 2d 436, ¶ 46. We explained that:

---

[3] A sexually violent person is defined as

a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect, or illness, and who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence.

WIS. STAT. § 980.01(7). "Mental disorder," in turn, is defined as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." Subsection (2).

174

By the plain language of the statute, the question at the probable cause hearing is not whether the individual is substantially probable to engage in acts of sexual violence if placed on supervised release or even if discharged from commitment; the statute draws no such distinction. Rather, the question at the probable cause stage is simply whether it is substantially probable that the person will engage in acts of sexual violence without regard to any specific restrictions, supervision or time frame. It is a black-and-white determination—it is either substantially probable that the person will engage in acts of sexual violence or it is not.

*Id.*, ¶ 46 (quoting *Thiel*, 275 Wis. 2d 421, ¶ 17).

¶ 13. After reviewing our prior case law on relevancy under WIS. STAT. ch. 980, we rejected Mark's argument that the terms of his supervision were relevant to whether he was a sexually violent person. We concluded that

evidence that a ch. 980 respondent will be on probation or parole if not adjudicated and committed as a sexually violent person is not relevant to the determination whether the respondent is a sexually violent person as defined in WIS. STAT. § 980.01(7); nor are the rules of any such probation or parole relevant to that determination. Section 980.01(7) plainly defines dangerousness as "dangerous because [the person] suffers from a mental disorder that makes it likely that the person will engage in acts of sexual violence," without regard to the nature of the restraint or supervision imposed on the person. Neither the detailed subsection on the allegations the petition must contain, [WIS. STAT.] § 980.02, nor the subsections on the probable cause hearing and trial, WIS. STAT. §§ 980.04 and 980.05, give any indication that the existence or degree of supervision if the person is not committed is relevant to the determination whether the person is sexually violent.

175

*Id.*, ¶ 47 (first alteration in original). The supreme court affirmed, concluding that the conditions of Mark's probation were irrelevant to whether or not he was a sexually violent person under § 980.01(7).[4] *State v. Mark*, 292 Wis. 2d 1, ¶¶ 35–41.

¶ 14. Budd argues, however, that our statement in *Mark* as to the irrelevancy of the mere fact of supervision was dicta, because the only issue before the court was the relevancy of the terms of Mark's probation. We disagree. Our analysis as to the relevancy of the terms of Mark's probation was inextricable from our conclusion that even the fact of supervision is irrelevant, based on the plain language of WIS. STAT. § 980.01(7) and prior case law. Moreover, we see no reason to apply a different analysis to the fact of supervision than the analysis used to hold the terms of supervision irrelevant in *Mark*. Under the same reasoning, the fact of supervision is irrelevant to whether Budd is a sexually violent person under § 980.01(7).[5]

[4] The supreme court concluded that the rules of Mark's probation were irrelevant to the inquiry of whether Mark was a sexually violent person, without addressing the part of our analysis holding that even the fact of supervision is irrelevant. *State v. Mark*, 2006 WI 78, ¶¶ 35–41, 292 Wis. 2d 1, 718 N.W.2d 90. Because the supreme court did not reverse that portion of our opinion, it remains controlling precedent. *See State v. Jones*, 2002 WI App. 196, ¶ 40, 257 Wis. 2d 319, 651 N.W.2d 305.

[5] Budd also argues that he was denied a fair trial and his right to confront the State's evidence by the court's exclusion of the supervision evidence because he was not allowed to use that evidence to challenge the State's methodology and because his own experts could not fully explain the basis for their opinions. We disagree. Budd was able to challenge the methodology used by the State's expert by cross-examining on the limitations of the methodology she used. Budd's experts were able to testify that they believed he was not a sexually violent person without

¶ 15. Next, Budd argues that the trial court erred in admitting the State's evidence as to the DOC's screening process for potential WIS. STAT. ch. 980 cases because that evidence was not relevant to whether Budd is a sexually violent person under WIS. STAT. § 980.01(7). Budd contends that the only point of that evidence was to unfairly sway the jury that he is one of the worst of all sex offenders by virtue of his appearing in court for ch. 980 proceedings. Budd asserts that the process the DOC uses to decide which cases to refer for ch. 980 proceedings is irrelevant to the question of whether Budd is a sexually violent person under § 980.01(7). Relying on the same argument the State used to exclude evidence of Budd's future supervision, Budd argues that nothing extrinsic to Budd's status at the moment of trial is admissible; that is, the process used to bring Budd before the court is irrelevant to the question of whether he is currently a sexually violent person. While we do not fully agree with Budd's reasoning, we agree that the screening evidence in this case was irrelevant.

¶ 16. We need not conclude, as Budd urges, that the DOC's screening process for potential WIS. STAT. ch. 980 cases is irrelevant as to the determination of whether a defendant is a sexually violent person as a matter of law. The problem with the screening evidence admitted in this case is that it did not establish why

reference to the fact that he would be on supervision. We recognize that the court's ruling was adverse to Budd and prevented him from presenting the entirety of his arguments. However, because the evidence showing Budd would be on supervision if released was not relevant to whether he is a sexually violent person, we cannot agree that exclusion of that evidence was so limiting to Budd that he was denied a fair trial.

Budd was selected for ch. 980 proceedings.[6] The evidence only explained that most sex offenders scheduled for release are not selected for ch. 980 proceedings, without explaining why a select few are so chosen.[7] There was no testimony as to the qualification of the ECRB or its chairman, or explanation of the evaluation process used by either. From the record, the ECRB's process could be random, or based on irrelevant criteria. As Budd points out, all the evidence served to do in this case was to inform the jury that Budd was selected as one of the 4.5% of sex offenders recommended for ch. 980 proceedings. Without explaining why, we do not see how that information is relevant to whether Budd is a sexually violent person under our analysis in *Mark*.[8]

---

[6] The "screening evidence" at issue is Marsh's testimony as to the process the DOC uses to screen sex offenders scheduled for release before referring certain sex offenders to her for special evaluations. We recognize that Marsh explained the methodology she uses to select certain sex offenders for WIS. STAT. ch. 980 proceedings from the group referred to her.

[7] Budd argues that the percentage of sex offenders referred for WIS. STAT. ch. 980 proceedings is in itself irrelevant to the issue of whether the respondent is a sexually violent person. He asserts that the outcome for other sex offenders has no bearing on whether he is a sexually violent person. However, because we conclude that the evidence presented in this case was irrelevant due to the lack of explanation as to the screening process used to refer Budd for ch. 980 proceedings, we need not reach the question of whether the percentage of sex offenders referred would ever be relevant.

[8] The State argues that the screening evidence is admissible under WIS. STAT. § 907.02 as specialized knowledge necessary to assist the jury in understanding the expert testimony. Again, we fail to see how the mere fact that a screening process takes place, without explaining the basis for the screening, provides specialized knowledge for the jury.

¶ 17. Because we have concluded that the screening evidence in this case was inadmissible, we turn to whether the trial court's error in admitting the evidence was harmless. "[A]n error is not harmless when it appears beyond a reasonable doubt that the error complained of 'contributed to the verdict obtained.' " *State v. Franklin*, 2004 WI 38, ¶ 76, 270 Wis. 2d 271, 677 N.W.2d 276 (Abrahamson, C.J., concurring) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). Thus, "[t]he question in harmless error analysis is whether the admission of [the erroneously admitted evidence] contributed to the jury verdict." *Id.*, ¶ 77 (Abrahamson, C.J., concurring). Factors relevant to a harmless error analysis include

> the nature of the error, the frequency of the error, the nature of the state's case, the nature of the defense, the importance of the erroneously admitted or excluded evidence to the prosecution's or defense's case, the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence, whether the erroneously admitted evidence duplicates the untainted evidence, and the overall strength of the prosecution's case.

*Id.*, ¶ 78 (Abrahamson, C.J., concurring).

¶ 18. Here, the State's expert testified that Budd was among only 4.5% of sex offenders selected for Wis. Stat. ch. 980 proceedings, stating that the chairman of the ECRB screens 75% of sex offenders out of the potential ch. 980 pool, the ECRB screens out another 50%, and that she refers only about a third of the cases she receives. The State referenced that testimony in closing to rebut the defense's implication that Marsh was biased, stating that her recommendations are con-

servative. One expert testified that Budd met the criteria of a sexually violent person and three experts testified that he did not. The screening evidence did not duplicate any properly admitted evidence. This is a close case. We conclude that the impact of telling the jury that the respondent was one of only 4.5% of sex offenders selected for ch. 980 proceedings, where three of the four experts testified that the respondent did not meet the criteria of a sexually violent person, contributed to the jury's finding that Budd is a sexually violent person. Accordingly, we reverse and remand for proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for proceedings consistent with this opinion.